[No. 27854. *En Banc.* April 26, 1940.]

GREAT NORTHERN RAILWAY COMPANY, *Respondent,* v.
DAVE S. COHN, *as acting Director of Licenses,
Appellant.*[1]

[1]Reported in 101 P. (2d) 985.

674

 

*The Attorney General, John E. Belcher* and *L. C. Brodbeck, Assistants,* for appellant.

*Thomas Balmer, Edwin C. Matthias,* and *Anthony Kane,* for respondent.

*Poe, Falknor, Emory & Howe, Wallace G. Mills, Harold P. Troy,* and *E. W. Anderson, amici curiae.*

MILLARD, J.—Chapter 186, Laws of 1939, p. 581 (Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21] *et seq.*), which repealed chapter 180, Laws of 1935, p. 706, as amended by chapter 116, Laws of 1937, p. 459, imposes upon each person engaged in the oil distribution business, in addition to any other tax provided by law, an excise tax upon each distributor of one-fourth of one cent for each gallon of fuel oil "withdrawn, sold, distributed, or in any manner used by such distributor" within this state, except as expressly exempted by § 15, chapter 186, Laws of 1939, p. 595, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35].

Section 15, chapter 186, Laws of 1939, provides that petroleum products withdrawn, sold, or distributed to any vessel engaged in foreign commerce, petroleum products withdrawn, sold, or distributed that are derived from crude oil refined within this state, petroleum products withdrawn, sold, or distributed to those who pay a public utility tax and who use the same to produce manufactured gas, shall be exempt from the tax.

On the theory that the section exempting those who withdraw, sell, or distribute petroleum products derived from the refining within this state of crude petroleum or crude oil was unconstitutional, and if given effect rendered the entire statute unconstitutional, the

attorney general of this state instituted an original proceeding in mandamus in this court March 22, 1939, to require the acting director of licenses to collect the tax imposed by chapter 186, *supra,* from distributors of petroleum products derived from crude oil refined within this state. The application for the writ was denied without written opinion.

Subsequently, an action was brought by the attorney general in the superior court for Thurston county to require the acting director of licenses to collect the tax from the exempted distributors just described. Motion to quash was granted on the ground that the original proceeding in this court was *res adjudicata.* On appeal of the attorney general from the judgment of dismissal, we held that the original mandamus proceeding in this court was dismissed solely on the ground of prematurity, and that we did not pass upon the question of constitutionality of the exemption provisions of the statute. *State ex rel. Hamilton v. Cohn,* 1 Wn. (2d) 54, 95 P. (2d) 38. The cause was remanded to the trial court with direction to overrule the motion to quash.

On the ground that it is not a distributor as that term is defined in chapter 186, Laws of 1939, with respect to any of the fuel oil used by it, as hereinafter described, and on the further ground that, if it is held to be a distributor within the purview of chapter 186, *supra,* the statute is unconstitutional, the Great Northern Railway Company brought this action against the acting director of licenses of this state, joining the Tidewater Associated Oil Company as a party defendant, to obtain a declaration of its rights under the uniform declaratory judgment act (Laws of 1935, chapter 113, p. 305; Laws of 1937, chapter 14, p. 39; Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.*) and for injunctive relief.

Trial of the cause to the court resulted in findings and judgment to the effect that chapter 186, Laws of 1939, is unconstitutional in its entirety, and that the statute has no application to the distribution, withdrawal, or use of fuel oil by anyone who is not engaged as his principal pursuit in the business of distributing, selling, withdrawing, or in any manner using petroleum products. The appeal is prosecuted from that decree by the acting director of licenses of this state.

It is the position of appellant that, while the state is inhibited by the Federal constitution from taxing imports or the business of importing, respondent may be required, under subd. (a), § 2, chapter 186, Laws of 1939, p. 581, Rem. Rev. Stat. (Sup.), § 8370-79a [P. C. § 7029k-22], subd. (a), reading as follows, to pay the excise tax on the fuel oil shipped from California in tank steamers, as that oil was acquired by respondent from the importer who did not pay the tax:

"(a) 'Distributor' shall mean and include . . . any person, firm, association or corporation who acquires the same within the state from any person refining it within or importing it into the state on which the tax of one-quarter (¼) cent per gallon has not been paid; . . ."

That is, the respondent may be required to pay the excise tax for the privilege of having acquired the fuel oil from the importer within the state and thereafter withdrawing the fuel oil from storage and using that oil within this state. Appellant concedes that, under our holding in *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694, and *State v. Fidelity & Deposit Co.,* 194 Wash. 591, 78 P. (2d) 1090, on shipments by tank steamships from California and delivered to the railroad company in this state, the oil company and not the railroad company was the importer.

It is insisted by appellant that, as to the oil imported

by respondent from Montana and Oregon in railroad tank cars and unloaded therefrom into respondent's storage tanks in the state of Washington and thereafter withdrawn and used by respondent within this state, respondent is a distributor under that part of subd. (a), § 2, chapter 186, *supra,* which defines the third class of distributors as follows:

"(a) 'Distributor' shall mean and include . . . any person, firm, association or corporation who imports the same into this state and withdraws, sells, distributes or in any manner uses the same in this state."

It is urged that the question of interference with interstate commerce is answered in both instances by the statutory imposition of the excise *tax not on the importation but for the privilege of withdrawing the oil from storage after* the *interstate transportation* has ended and the oil has ceased to be an import.

Another contention of appellant is that, if the exemption features of chapter 186, *supra,* contravene the state and Federal constitutions, the discriminatory exemptions may be stricken from the statute, and the remainder of the act will be a complete and workable revenue measure which is valid, in view of the legislative declaration in § 21 of the statute, p. 598, Rem. Rev. Stat. (Sup.), § 8370-80s [P. C. § 7029k-40], that, if any section, etc., of the act is held to be unconstitutional, such decision shall not affect the validity of the remaining portions of the statute.

Counsel for respondent insist that it is not engaged in business as a distributor of fuel oil, therefore respondent is not subject to the tax in question. A second ground urged by respondent is that chapter 186, Laws of 1939, is unconstitutional in that it violates certain provisions of the Federal and state constitutions.

Respondent railway company is engaged solely in the business of railroading. Its use of fuel oil is inci-

dental to its railroad business. It buys fuel oil from local refiners and from refiners and oil companies located in Oregon and Montana. Respondent brings the fuel oil purchased by it in Oregon and Montana into this state as company material and property of the railway company. It buys fuel oil refined in California from the Tidewater Associated Oil Company and takes delivery of that oil at tidewater in this state.

All of this fuel oil is placed by respondent in its stationary storage facilities, and respondent withdraws and uses that oil to produce the power by which its trains are operated. That is, respondent is engaged in the business of railroading and is not engaged in the business of selling, withdrawing, or distributing fuel oil. None of the fuel oil received by respondent is sold or distributed by respondent to other parties. We cannot stress too strongly the fact that the railroad company is not engaged in the business of using fuel oil, but is engaged solely in the railroad business and uses or consumes fuel oil just as it uses or consumes other supplies in conducting the business of railroading.

The fuel oil used by respondent in the operation of its trains between May 1, 1939, the effective date of chapter 186, Laws of 1939, and the trial of this cause, was acquired from four sources: Approximately seven million gallons were on hand and in storage when the act became effective; sixty thousand eight hundred and fifty-nine gallons, which were acquired after May 1, 1939, from the Inland Empire Refineries, Inc., which distributor is exempted by subd. (e) of § 15, chapter 186, Laws of 1939, p. 595, Rem. Rev. Stat. (Sup.), § 8370-80m [P. C. § 7029k-35], subd. (e), from the excise tax (which exemption appellant concedes is discriminative and violates the equal protection clause of the fourteenth amendment to the Federal constitution

and § 12 of Art. I of the state constitution); five million two hundred forty thousand and seventy-six gallons which were acquired from the Tidewater Associated Oil Company and transported and delivered to respondent at tidewater in this state in the same manner as the fuel oil was delivered to the Great Northern Railway Company by the Associated Oil Company described in the opinion of this court in *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694; and more than six million gallons of fuel oil which were purchased by respondent and delivered to it in tank cars on respondent's tracks in Oregon and Montana and brought by respondent into this state as property of the railway company.

The statute (chapter 186, Laws of 1939, p. 581) challenged by respondent, is entitled:

"An Act providing an excise tax upon the business of distributing, selling, withdrawing or in any manner using refined or partially refined liquid or liquefiable petroleum products, . . . "

Section 1 of the statute, p. 581, Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21], imposes the tax

". . . upon every distributor . . . for each gallon of refined or partially refined liquid or liquefiable petroleum products withdrawn, sold, distributed or in any manner used by such distributor in the State of Washington, except as expressly exempted by section 15."

Three classes of persons are defined by § 2 of the act, p. 581, Rem. Rev. Stat. (Sup.), § 8370-79a [P. C. §7029k-22], as distributors. The first class consists of those who refine, manufacture, or compound liquid or liquefiable petroleum products, *and* withdraw, sell, distribute, or in any manner use the same within this state. The second class of distributors is composed of those who acquire the petroleum products within this

state from any person refining it within or importing it into this state, on which the tax of one-fourth of one cent a gallon has not been paid. The third class of distributors is defined as those persons who import the products into this state *and* withdraw, sell, distribute or in any manner use the same in this state.

■ Article II, § 19, of the state constitution provides that no bill shall embrace more than one subject and that shall be expressed in the title; therefore, if an act is broader than its title or embraces subjects not included in the title, it contravenes Art. II, § 19, of the state constitution.

■ In determination of the question whether the title of an act is in compliance with the constitutional requirement invoked by respondent, the title must be construed with reference to the language used in the title only and not in the light of the context of the act.

■ It is clear that, in construing chapter 186, *supra*, with reference to the language employed in the title, the tax is on the business of dealing in petroleum products measured by the number of gallons withdrawn, sold, distributed, or used by such distributor, and was not intended to be a tax upon the business of using fuel oil in the operation of a railroad. That this is so, is readily disclosed by an examination of the provisions of other excise tax statutes enacted at the 1939 session.

In addition to *ad valorem* taxes paid by respondent during 1938, respondent paid to the state during 1939 excise taxes imposed under title V, chapter 180, Laws of 1935, p. 728, as amended and reenacted by chapter 227, Laws of 1937, p. 1138, and chapter 225, Laws of 1939, p. 976, "for the act or privilege of engaging within this state in the business of operating any railroad, by whatever power operated."

In 1933, a tax for the privilege of engaging in the

railroad business was first imposed. The enactment, known as the occupational tax, was chapter 191, Laws of 1933, p. 869, and is entitled: "An Act relating to taxation; imposing taxes upon the privilege of engaging in business activities . . . " Under that statute, a tax was exacted, for the privilege of engaging in the railroad business, at the rate of one and one-half per cent of the gross income derived from such business. In sustaining the constitutionality of that statute, we said, regarding the scope of the tax, in *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 408, 25 P. (2d) 91:

"We have, then, a measure which evidences the purpose to tax the privilege of carrying on those businesses which are, in a broad sense, commercial in their nature, buying for resale at a profit, producing for sale, transporting and financing for profit (which are recognized as an important part of production), and all like enterprises which look to the purpose of bringing usable commodities of various sorts into the hands of the ultimate consumer."

Chapter 191, Laws of 1933, was reenacted by chapter 180, Laws of 1935, which chapter is divided into titles. The business and occupational tax became title II, p. 709, and a new tax entitled "public utility tax" became title V, p. 728. Titles II and V are almost the same, except that title V is applicable to public service companies and title II to business generally.

The first section of title V, which is § 36 of chapter 180, p. 728, provides that,

"From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. Such tax shall be equal to the gross operating revenue of the business, multiplied by the rate set out after the business, as follows:

"I. Railroad, . . . three per cent; . . . "

"Sec. 37. For the purposes of this title, unless otherwise required by the context:

"(a) The term 'railroad business' means the business of operating any railroad, by whatever power operated, for public use in the conveyance of persons or property for hire: . . . "

The activity for which the tax was imposed was for the act or privilege of engaging within this state in the business of operating any railroad by whatever power operated.

In *Seattle Gas Co. v. Seattle*, 192 Wash. 456, 73 P. (2d) 1312, 77 P. (2d) 382, we said, regarding the nature of the tax imposed:

"Although not distinguishing the exaction from a sales tax, this court, in *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 25 P. (2d) 91, said:

" 'The privilege of engaging in business and gainful pursuits under the protection of our laws is something which must and does exist before the business can be established, and something far and away beyond and above the mere ownership of a business . . .

" 'This is the privilege . . . which it is now sought to tax.' "

The occupational tax imposed by chapter 191, Laws of 1933, and the public utility tax imposed by title V, chapter 180, Laws of 1935, were both sustained as a tax upon the privilege of engaging in certain businesses, including the railroad business.

The legislature imposed a tax of three per cent on gross revenue for the privilege of engaging within this state in the railroad business and defined the phrase *"railroad business"* as the *business of operating any railroad, by whatever power operated.* (§§ 36, 37, chapter 180, Laws of 1935, p. 728.) We construed that statute as imposing a tax for the privilege of engaging in the business taxed. That statute was reenacted by the legislature in 1937 (§§ 10, 11, chapter 227, Laws of

1937, pp. 1150, 1151) and in 1939 (§§ 19, 20, chapter 225, Laws of 1939, pp. 998, 999, Rem. Rev. Stat. (Sup.), §§ 8370-36, 8370-37 [P. C. §§ 7030-96, 7030-97]).

The fuel oil tax statute (chapter 186, Laws of 1939) passed the Senate March 2nd, passed the House March 8th, and was signed by the governor March 17, 1939. Chapter 225, Laws of 1939, which reenacted the public utility tax passed the Senate March 9th, passed the House March 9th, and was signed by the governor March 21, 1939. Both acts became effective May 1, 1939.

The two statutes must be read *in pari materia*. So read, it could not be logically held that, by chapter 186, Laws of 1939, the legislature intended to impose a tax upon a railway company for the privilege of using fuel oil in the operation of its trains, when by the title of the act the tax is imposed upon the business of distributing, selling, withdrawing, or in any manner using fuel oil, when, at the same session, the legislature reenacted by chapter 225, Laws of 1939, the public utility tax law imposing a tax upon railroad companies for the privilege of engaging in the business of operating a railroad by whatever power operated. Surely, the legislature would not have undertaken, by the method of passing two different statutes at the same legislature, to exact two different taxes of respondent, one for the privilege of engaging in the railroad business by whatever power operated and another for the privilege of using fuel oil to generate that power.

The privilege of engaging in the railroad business by whatever power that business is operated must include the privilege of using fuel oil essential to the operation of its trains, the operation of which constitutes the railroad business.

In *Jensen v. Henneford,* 185 Wash. 209, 218, 53 P.

(2d) 607, in holding the net income tax law unconstitutional, we said:

"But the mere right to own and hold property cannot be made the subject of an excise tax, because to tax by reason of ownership of property is to tax the property itself. [Citing authorities.]

"The right to receive property (income in this instance) is but a necessary element of ownership, and, without such right to receive, the ownership is but an empty thing and of no value whatever. 'In common understanding, to hold property is to own it. In order to own or hold, one must acquire.' . . . The right to receive, the reception, and the right to hold, are progressive incidents of ownership and indispensable thereto. To tax any one of these elements is to tax their sum total, namely, ownership, and, therefore, the property (income) itself."

So, too, if one is to engage in the business of railroading, one must operate trains. Trains cannot be operated without motive power, and in order to utilize motive power, one must consume fuel. It is indispensable to the right to operate trains, to consume fuel to produce the motive power necessary to that operation. To tax any one of these elements, is to tax their sum total, viz., the right to engage in the business; and, of course, to tax their sum total is to tax all of the necessary elements.

The result would be double taxation if chapter 186, Laws of 1939, be construed as imposing a tax on the railway company for the privilege of using fuel oil to generate power to operate its trains. The presumption is against the intention of the legislature to impose double taxation on the same property, and that presumption prevails unless overcome by the express words of statute. *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 174, 96 Pac. 1047, 19 L. R. A. (N. S.) 707; 61 C. J. 137, § 71.

The privilege of engaging in the business of operat-

ing a railroad, as well as using the fuel, were taxed under the provisions of chapter 225, Laws of 1939, and were taxed under the provisions of titles IV and V of chapter 180, Laws of 1935, pp. 726, 728, as amended by chapter 191, Laws of 1937, p. 943, and chapter 227, Laws of 1937, p. 1138, before chapter 186, Laws of 1939, p. 581, was enacted. There is no reasonable basis for the conclusion that it was intended to include the railroad business in the business intended to be taxed under the title of chapter 186, Laws of 1939.

Our first fuel oil tax statute was enacted as title XI of chapter 180, Laws of 1935, p. 749. That revenue act was entitled, in part:

"An Act relating to revenue and taxation; . . . providing for the levy and collection of a tax upon the sale, use or distribution of fuel oil and diesel oil . . ."

On January, 1936, an action was commenced by the state to recover the amount of the tax assessed, under title XI, chapter 180, Laws of 1935, upon a shipment of fuel oil from California by an oil company to the Northern Pacific Railway Company. This was prior to the enactment of chapter 116, Laws of 1937, p. 459, which amended title XI, chapter 180, Laws of 1935. On May 3, 1938, we held in the action by the state to collect the tax (*State v. Fidelity & Deposit Co.,* 194 Wash. 591, 78 P. (2d) 1090) that, although title XI which included §§ 78 to 81, inclusive, of chapter 180, of the Laws of 1935, pp. 749 to 751, is captioned "fuel oil tax," it was clear from the language of § 78, p. 749, that the tax therein provided was not a tax on fuel oil, but it was an excise tax imposed upon persons with respect to the privilege of distributing fuel oil. We further held that the Northern Pacific Railway Company was not a distributor of fuel oil, therefore it was not liable for the tax imposed by title XI, chapter 180, Laws of 1935.

In 1937, the legislature enacted chapter 116, Laws of 1937, which amended title XI, chapter 180, Laws of 1935. The act was entitled: "An Act providing an excise tax upon the business of selling fuel oil . . ." That act became effective March 13, 1937, which was prior to the filing of our opinion in *State v. Fidelity & Deposit Co., supra*. The amendatory statute *changed* the nature of the tax *from* one for the *privilege of distributing fuel oil to* a *tax upon* the *business of selling fuel oil*.

The question whether the tax imposed by title XI, chapter 180, Laws of 1935, was intended to be restricted to those dealing in the distribution of fuel oil as a business or also to be applied to those who used fuel oil, where withdrawal and distribution are incidental to the principal use, was not involved in *State v. Fidelity & Deposit Co.*, 194 Wash. 591, 78 P. (2d) 1090, or in *Great Northern R. Co. v. State*, 200 Wash. 392, 93 P. (2d) 694.

Chapter 186, Laws of 1939, broadened the base of the tax and made the tax applicable to all refined or partially refined liquid or liquefiable petroleum products, rather than restricting the tax to fuel and diesel oil, as in the 1935 and 1937 statutes. Chapter 186, Laws of 1939, is entitled:

"An Act providing an excise tax *upon the business* of distributing, selling, withdrawing or in any manner using refined or partially refined liquid or liquefiable petroleum products, . . . and repealing . . . [Title XI], chapter 180, Laws of 1935 as amended by chapter 116, Laws of 1937. . . ." (Italics ours.)

It is clear to us that, by again using the word *"business"* in the title of chapter 186, Laws of 1939, as it did in chapter 116, Laws of 1937, but as it refrained from doing in chapter 180, Laws of 1935, the legislature plainly indicated its intention to impose a *tax upon the*

*business of distributing* petroleum products *rather than upon the use of petroleum products in a business where* the *use and distribution* of such products *are* merely *incidental to* the *principal business.*

In the construction of statutes which reenact with certain changes, or repeal, former statutes, or which contain revisions or codifications of earlier laws, resort may be had to repealed and superseded statutes *in pari materia.* An apt authority is *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015, in which we held that, in the construction of a statute which restricted the inheritance of pretermitted heirs by the omission of the word "descendants" of certain heirs in one clause, it is proper to consider the repealed or superseded act, including the word in the same section of the former act *in pari materia,* from which an intent to change the law must be presumed.

On September 1, 1939, which was subsequent to the effective date (May 1, 1939) of chapter 186, Laws of 1939, we held in *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694, that the railway company, under facts not materially dissimilar from those in *State v. Fidelity & Deposit Co.,* 194 Wash. 591, 78 P. (2d) 1090, was not a distributor under chapter 180, Laws of 1935, and chapter 116, Laws of 1937; and that the only change in the 1935 statute by the 1937 enactment was to discontinue the tax on use. The legislature repealed instead of amended the 1935 and 1937 fuel oil statute and, by the title it gave to the 1939 enactment (chapter 186, Laws of 1939), indicated its intention, once more, to change the tax to a tax upon "the business."

The reason in the legislative mind for this change may have been the fact that the public utility tax statute exacted a tax for the privilege of engaging in various businesses, among which was "the operation of a

railroad, by whatever power operated," and the compensating tax statute, imposed a tax for the privilege of using tangible personal property purchased at retail or produced or manufactured for commercial use. Hence, the fuel oil tax statute should be restricted to a tax upon the fuel oil distribution business and should not cover the field already occupied by the public utility and compensating taxes.

That the legislative intent was to limit the fuel oil tax to persons engaged in the business of dealing in refined or partially refined liquid or liquefiable petroleum products, is evidenced when we construe, as we stated above, *in pari materia* and in accordance with their titles, the compensating tax statute and the fuel oil and public utility tax statute. Further (chapter 186, Laws of 1939), an examination of the entire fuel oil tax statute will disclose a number of provisions which conclusively establish such legislative intent.

Section 3 of chapter 186, Laws of 1939, p. 582 (Rem. Rev. Stat. (Sup.), § 8370-80a [P. C. § 7029k-23]), provides that every person, before becoming a distributor or continuing *in business as a distributor,* shall make an application to the director of licenses for a license authorizing such distributor or person *to engage in business as a distributor.* The section further provides that, before granting any license authorizing any person *to engage in business as a distributor* the director of licenses must require such person to file a bond with said director.

Section 4, p. 584 (Rem. Rev. Stat. (Sup.), § 8370-80b [P. C. § 7029k-24]), provides that, when the application for a license has been accepted and the filing fee therefor has been paid and the bond filed and approved, the director shall issue to such distributor a license *to transact business as a distributor* in this state. The di-

rector is then required to issue to the licensee a certificate, which the distributor is required to display conspicuously *at his place of business* in this state. In the event that any application for license *to transact business as a distributor* in this state is filed by any person whose license shall at that time have been canceled for cause by the director, the director shall, after a hearing, have the right to refuse to issue to such person a license to *transact business as a distributor* in this state.

Section 5, p. 586 (Rem. Rev. Stat. (Sup.), § 8370-80c [P. C. § 7029k-25]), provides that, *whenever* a distributor *ceases to engage in business as a distributor by reason of* the *discontinuance, sale, or transfer of* the *business of* such *distributor* it shall be the duty of such distributor to notify the director in writing at the time the discontinuance, sale, or transfer takes effect. Such notice shall give the date of discontinuance and, *in the event of* a *sale or transfer of the business,* the date of the discontinuance and *the name* and address *of* the *purchaser of the business.* If such notice is not given, the purchaser of the business becomes liable to the state for the amount of all taxes accrued against the distributor so selling or transferring his business to the extent of the value of the property and business to be acquired.

Section 6, p. 587 (Rem. Rev. Stat. (Sup.), § 8370-80d [P. C. § 7029k-26]), provides for monthly reports by the distributor of the gallonage of petroleum products withdrawn, sold, distributed, or used by such distributor.

Section 7, p. 587 (Rem. Rev. Stat. (Sup.), § 8370-80e [P. C. § 7029k-27]), provides for penalty for failure to promptly make tax payments and also penalizes one who acts as a distributor without first securing the distributor's license required under the act.

Section 9, p. 591 (Rem. Rev. Stat. (Sup.), § 8370-80g [P. C. § 7029k-29]), requires each distributor to keep a true and accurate record of his "transactions in petroleum products."

Under § 13, p. 593 (Rem. Rev. Stat. (Sup.), § 8370-80k [P. C. § 7029k-33]), the director of licenses is authorized to cancel the license of any distributor " . . . if said director shall ascertain and find that the person to whom such license has been issued *is no longer engaged in the business of a distributor. . . .*" (Italics ours.)

Section 20, p. 598 (Rem. Rev. Stat. (Sup.), § 8370-80r [P. C. § 7029k-39]), provides that "The tax herein levied is in lieu of any excise, privilege or occupational tax upon the business of withdrawing, selling or distributing petroleum products . . ."

Manifestly, the foregoing provisions of chapter 186, Laws of 1939, disclose the legislative intent was not to tax the mere use or consumption of petroleum products, first covered by other tax statutes, but the intent was to tax those persons who are engaged in the business of dealing in such products. Section 20 of the statute declares that the tax is in lieu of any excise or privilege tax upon the business of withdrawing, selling, or distributing petroleum products, and, like the other provisions of the act, it will be noted, relates to "the business of withdrawing, selling or distributing petroleum products."

Respondent, by use of fuel oil in the operation of its trains, is not engaged as a distributor in "the business of distributing, selling, withdrawing or in any manner using petroleum products." No useful purpose would be served by citing—and quoting profusely therefrom—the numerous authorities in harmony with the view we have expressed above.

The second ground—unconstitutionality of chapter 186, Laws of 1939—urged by respondent for affirmance of the judgment is sustained in *State v. Inland Empire Refineries, Inc., ante* p. 651, 101 P. (2d) 975.

■ The position of appellant that, if chapter 186, Laws of 1939, is unconstitutional, respondent is subject to the tax imposed by chapter 116, Laws of 1937, which is revived by the voiding of chapter 186, Laws of 1939, is not tenable.

As we stated earlier in this opinion, the legislature evinced very clearly its intention when it enacted chapter 116, Laws of 1937, to impose an excise tax upon the business of selling fuel oil. It should be borne in mind that, under the provisions of chapter 180, Laws of 1935, the tax was imposed upon distributors for each gallon sold, distributed, withdrawn, or used by distributors. That provision was changed by § 1, chapter 116, Laws of 1937, p. 459, to provide for a tax for each gallon "sold, distributed or withdrawn by him."

The legislature, by the 1937 statute, restricted the fuel oil tax to those engaged in the business of selling. The only change in the 1935 statute by the 1937 enactment was, as we said in *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694, to discontinue the tax on use. In the case cited, the question before us was whether the railway company imported the fuel oil and thereby came within the definition of distributor. We held that it did not. There was not presented to us for determination the question whether, if the railway company was the importer of the fuel oil, it would be subject to tax on oil brought in for use in the operation of the railway company's line of railroad.

Even if the 1937 act were revived, respondent would not be subject to the fuel oil tax, in view of the fact

that it does not sell fuel oil. Such use as respondent makes of fuel oil is incidental to respondent's operation of its railroad.

It is clear that chapter 186, Laws of 1939, which became effective May 1, 1939, on which date respondent had in storage in this state more than six million gallons of fuel oil, does not by its terms apply to that oil; and it cannot, it is equally plain, under rules long since enunciated and consistently followed, of statutory construction, be made to apply to that oil. To be taxable under chapter 186, Laws of 1939, one must be a distributor. To be a distributor, as defined by the statute, one must fall within one of three classes of persons, viz., (1) persons who refine, manufacture, or compound liquid or liquefiable petroleum products, *and* withdraw, sell, distribute or in any manner use the same; (2) persons who acquire such products within this state from any person who refines it within or imports it into this state on which the prescribed gallonage tax has not been paid; (3) persons who import such products into this state *and* withdraw, sell, distribute or in any manner use the same within this state.

Surely, no one will argue that the first definition applies to the respondent. If the respondent is a distributor with respect to the oil acquired prior to the effective date of the statute, it would have to be under the second or third definition.

The second definition defines a distributor as one who *acquires* the petroleum within the state from another who has not paid the tax. The acquisition alone makes one a distributor, but it only makes such a person a distributor who acquires the products. It has no relation to one who previously made the acquisition. The word "acquires" is clearly in the future tense. If the legislature intended to define as a distributor

one who had "acquired" such products, it could and, doubtless, would have said so in terms.

The rule is that the intention of the legislature is to be deduced from what it said, and that a tax will not be extended by construction to things not named or described in the statute. Both importation and withdrawal or use are necessary to constitute a person a distributor under the third definition. Either the importation or the withdrawal or use will not have that effect, and both the importation and the withdrawal or use must occur subsequent to the effective date of the statute. Respondent did not, after the effective date of the statute, import the fuel oil under consideration at this point, hence it is not a distributor with respect to that oil.

Even a cursory reading of chapter 186, Laws of 1939, shows that the legislature intended that the statute have a prospective and not a retrospective operation. The well-settled rule, which needs no citation of sustaining authority, is that a statute will be given a prospective interpretation unless by its terms it is expressly declared to be retroactive.

Respondent is not, either under chapter 186, Laws of 1939, or—conceding *arguendo* that the act was revived —chapter 116, Laws of 1937, a distributor of fuel oil with respect to fuel oil acquired or imported subsequent to May 1, 1939, or with respect to fuel oil on hand and in storage May 1, 1939.

We note on page 23 of appellant's reply brief that counsel for appellant concedes, in view of *State v. Fidelity & Deposit Co.*, 194 Wash. 591, 78 P. (2d) 1090, and *Great Northern R. Co. v. State*, 200 Wash. 392, 93 P. (2d) 694, that Tidewater Associated Oil Company is not a distributor with respect to fuel oil sold by it to respondent. This obviates the necessity of discussing

the question of liability of defendant, under chapter 186, Laws of 1939, for any tax on that oil.

The judgment is affirmed.

STEINERT, SIMPSON, BEALS, GERAGHTY, ROBINSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—In registering dissent in this case, I assume the constitutionality of chapter 186, Laws of 1939, p. 581, for the reasons stated in the dissenting opinion in case No. 27852. That respondent is a "distributor" in contemplation of the act, seems to me to be too clear for argument. The term is defined in § 2 (a), p. 581, as follows:

" 'Distributor' shall mean and include every person, firm, association or corporation who refines, manufactures or compounds liquid or liquefiable petroleum products, and withdraws, sells, distributes, or in any manner uses the same in this state; *also any person, firm, association or corporation who acquires the same within the state from any person refining it within or importing it into the state on which the tax of one-quarter (¼) cent per gallon has not been paid; or any person, firm, association or corporation who imports the same into this state and withdraws, sells, distributes or in any manner uses the same in this state.*" (Italics mine.)

Obviously, by this broad definition, the legislature intended to prevent the escape from a tax of ¼ cent per gallon of any fuel oil sold or *used* in this state— whether it was imported by the user or another. That the exaction sought to be levied against respondent is neither a tax on imports nor an unconstitutional burden on interstate commerce, is firmly established by numerous decisions of the supreme court of the United States. *Nashville, C. & St. L. R. v. Wallace*, 288 U. S. 249, 77 L. Ed. 730, 53 S. Ct. 345, 87 A. L. R. 1191; *Wiloil Corp. v. Pennsylvania*, 294 U. S. 169, 79 L. Ed.

838, 55 S. Ct. 358; *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 60 S. Ct. 388; *McGoldrick v. Compagnie Generale Transatlantique,* 309 U. S. 430, 60 S. Ct. 670.

In the case first cited, the court had under consideration a statute which, for all intents and purposes, is indistinguishable from ours. Sustaining the validity of the statute, the court said:

"Chapter 58, Tennessee Public Acts, 1923, as amended by Chapter 67, Tennessee Public Acts, 1925, is said, by its caption, to impose a privilege tax 'on persons . . . and corporations engaged in or carrying on the business . . . of selling or storing or distributing gasoline . . .' within the state at the rate of 2¢ per gallon on the gasoline sold or stored, the tax 'to be used solely in the construction and maintenance of a highway system in the state.' But § 3 provides: 'The tax imposed by this Act shall apply to persons, firms or corporations, dealers or distributors storing any of the products mentioned in this Act and distributing the same or allowing the same to be withdrawn from storage whether such withdrawal be for sale or other use. . . .' Storage of the gasoline and withdrawal of it from storage within the state for use or sale, are, as the state Supreme Court has held, the events which, by the very terms of the statute, call it into operation. . . .

"The tax is assailed both on the ground that it is imposed on the gasoline while still a subject of interstate commerce in the course of transportation from points of origin to points outside the state of Tennessee; and on the ground that it is in effect a tax upon the use of the gasoline in appellant's business as an interstate carrier, and is thus an unconstitutional burden on interstate commerce.

"The gasoline, upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce and lost its immunity as such from state taxation. *General Oil Co. v. Crain,* 209 U. S. 211; *Bacon v. Illinois,* 227 U. S. 504; *Susquehanna Coal Co. v. South Amboy,* 228 U. S. 665, 669; *Hart Refineries v.*

*Harmon,* 278 U. S. 499; *Gregg Dyeing Co. v. Query,* *286* U. S. 472. The fact that the oil was, in the ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the state, part of it thus becoming again the subject of interstate transportation, did not affect the power of the state to tax it all before that transportation commenced. Neither the appellant, the shippers, nor the carrier, at the time of the shipment of the gasoline from points of origin, arranged a destination for any part of the oil other than the appellant's storage tanks in Tennessee. Although in the usual course of business a variable and undefined part of it, when segregated for that purpose, would again be transported across state boundaries, appellant was free to distribute the oil either within or without the state for use in its business or for any other purpose. . . . The oil in storage was not a subject of interstate commerce and so was a part of the common mass of goods within the state, subject to local taxation. . . .

"It cannot be doubted that, when the gasoline came to rest in storage, the state was as free to tax it, notwithstanding its prospective use as an instrument of interstate commerce, as it was to tax appellant's right of way, rolling stock or other instruments of interstate commerce, which are subject to local property taxes. . . . Here the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are completely exercised before use of the gasoline in interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations."

MAIN, J., concurs with BLAKE, C. J.