[No. 36633.   En Banc.   October 10, 1963.]

*In the Matter of* LAURA G. BALE.
BOEING AIRPLANE COMPANY, *Respondent,* v. EMPLOYMENT SECURITY DEPARTMENT *et al., Appellants.*\*

\*Reported in 385 P. (2d) 545.

*The Attorney General, Paul J. Murphy, Charles E. Siljeg* and *M. Lee Price, Assistants,* for appellants.

*Holman, Marion, Black, Perkins & Coie* and *J. David Andrews,* for respondent.

HUNTER, J.—This is an appeal from a judgment of the Superior Court for King County reversing a decision of the Acting Commissioner of the Employment Security Department (Commissioner herein) who held that the claimant, Laura G. Bale, had "good cause" for terminating her employment with the Boeing Airplane Company (Boeing herein) when she voluntarily left her job in order to

join her husband, who had taken a teaching position in Oakville, Washington.

Subsequent to terminating her job with Boeing, the claimant applied for unemployment compensation benefits which were granted by the Employment Security Department. Boeing, as the interested employer, filed an appeal with the Appeal Tribunal which ruled that the claimant had left work with good cause within the purview of RCW 50.20.050:

"An individual shall be disqualified for benefits for the calendar week in which he has left work voluntarily without good cause and for the five calendar weeks which immediately follow such week."

The Commissioner reviewed the record, adopted the findings of fact and conclusions of the Appeal Tribunal, and affirmed its decision.

Boeing appealed to the Superior Court for King County which reversed the decision of the Commissioner. The trial court entered conclusion of law No. 2, as follows:

"The words 'good cause' as used within Section 73 [RCW 50.20.050] of the Washington Employment Security Act means a cause attributable to or connected with the claimant's employment."

and conclusion of law No. 3, as follows:

"The claimant voluntarily left her work without good cause, under Section 73 [RCW 50.20.050] of the Washington Employment Security Act, when she left her employment to join her husband in another locality."

This appeal followed.

The Commissioner assigns error to the trial court's entering of conclusion of law No. 2 and conclusion of law No. 3, as set forth above.

The first issue raised by these assignments of error is whether the words "good cause," as found in RCW 50.20.050, are limited to mean those causes which are "attributable to or connected with the claimant's employment" or are to be construed so as to include compelling personal reasons.

■ In construing RCW 50.20.050, our fundamental purpose and object is to ascertain, if possible, and to give effect to the intention of the legislature. *Graffel v. Honeysuckle,* 30 Wn. (2d) 390, 191 P. (2d) 858 (1948). The Commissioner argues that, in determining this intent, we must consider the legislative history.

Boeing argues, however, that, according to the authority of *Parkhurst v. Everett,* 51 Wn. (2d) 292, 318 P. (2d) 327 (1957), where the preamble is clear, unambiguous and well understood, it is improper to consider legislative history. Boeing contends that, although RCW 50.20.050 lacks the words "attributable to or connected with the claimant's employment," the preamble to the act clearly and unambiguously supplies this meaning. RCW 50.01.010, which is the preamble to the act, reads as follows:

"Whereas, *economic insecurity* due to unemployment is a serious menace to the health, morals and welfare of the people of this state; *involuntary unemployment* is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the *unemployed worker and his family.* Social security requires protection against this greatest hazard of our economic life. This can be provided only by application of the insurance principle of sharing the risks, and by the *systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment,* thus maintaining purchasing powers and limiting the serious social consequences of relief assistance. The state of Washington, therefore, exercising herein its police and sovereign power endeavors by this title *to remedy any widespread unemployment situation* which may occur and to set up safeguards to prevent its recurrence in the years to come. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of *persons unemployed through no fault of their own,* and that this title shall be liberally construed for the purpose of reducing *involuntary unemployment* and the suffering caused thereby to the minimum." (Italics supplied by Boeing.)

■ Boeing contends this preamble undeniably indicates a legislative intent that the act is not for the purpose of providing benefits for one who ceases employment for purely personal reasons but only for those who are involuntarily unemployed. Reading the preamble in isolation, the contention appears unanswerable. However, this we cannot do. Although the preamble may be considered and may play an important role in determining legislative intent, *Whatcom Cy. v. Langlie,* 40 Wn. (2d) 855, 246 P. (2d) 836 (1952), it is not controlling, and must be read in context with the specific statute before us, RCW 50.20.050.

■ From a reading of RCW 50.20.050, it is patently obvious that, contrary to Boeing's contention, the act permits the allowance of benefits to those who cease employment for personal reasons without regard to whether the claimant has been involuntarily unemployed. RCW 50-.20.050 states:

"An individual shall be disqualified for benefits *for the calendar week in which he has left work* voluntarily without good cause and *for the five calendar weeks which immediately follow such week."* (Italics ours.)

Except for the italicized 6-week period, RCW 50.20.050 authorizes benefits to those who voluntarily leave work without good cause whether or not the cause is "attributed to or connected with the employment."

Likewise, the preamble, which speaks of benefiting those who are *involuntarily* unemployed, is inconsistent with RCW 50.20.050, *supra,* which authorizes benefits for those who quit *voluntarily* with good cause. Thus, the preamble, when considered together with RCW 50.20.050, is neither clear, unambiguous nor well understood. The rule of *Parkhurst v. Everett, supra,* as utilized by Boeing, is therefore not in point.

Having rejected Boeing's contention that the preamble clearly indicates the legislative intent relative to RCW 50.20.050, we now turn to other means to determine such intent. The most compelling indication of the legislature's intent is found in the history of the enactment.

Laws of 1937, chapter 162, § 5 (a), the progenitor of RCW 50.20.050, was the original Employment Security Act of this state. It was amended in 1937, in 1939, and again in 1941. This enactment and these amendments placed no express limitation on the phrase "good cause." They were substantially the same as Laws of 1941, chapter 253, § 3, which was an amendment reading as follows:

"Section 5. DISQUALIFICATION FOR BENEFITS. An individual shall be disqualified for benefits:

"(a) For the calendar week in which he has left work voluntarily without good cause, if so found by the Commissioner, and for a period ensuing immediately thereafter of not less than two, nor more than five, weeks as the Commissioner shall determine (in addition to the waiting period)."

In Laws of 1943, chapter 127, § 3, the legislature amended the above section to read as follows:

"Section 5. *Disqualification for Benefits.* An individual shall be disqualified for benefits:

"(a) For the calendar week in which he has left work voluntarily without good cause *for reasons related to the work in question,* if so found by the Commissioner, and for a period ensuing immediately thereafter of not less than two, nor more than five, weeks as the Commissioner shall determine (in addition to the waiting period).

"(b) For the calendar week in which he has left work voluntarily *for a personal reason not connected with, or related to his work,* if so found by the Commissioner, . . ." (Italics ours.)

In Laws of 1945, chapter 35, § 188, the legislature repealed all acts relating to unemployment compensation, including the 1943 amendment set forth above, and, in Laws of 1945, chapter 35, § 73, enacted what was later to become RCW 50.20.050, *supra.* The legislature, in Laws of 1945, chapter 35, § 73, removed the words "for reasons related to the work in question" and "for a personal reason not connected with or related to his work" which are found in the 1943 amendment.

(In passing, it should be noted that, since 1945, the Commissioner has consistently interpreted RCW 50.20.050

to mean that benefits are to be allowed for voluntary termination of employment based on compelling personal reasons. In 1959, 1961 and 1963, bills were introduced to repeal RCW 50.20.050 and to insert the restrictive language. In each instance, the legislature failed to take any affirmative action despite knowledge of the Commissioner's rulings. Assuming it to be true, as pointed out by Boeing, that these bills never came to a vote before the entire legislature, the fact that they were introduced and referred to committees has some probative value relative to the legislature's intent.)

In *Graffell v. Honeysuckle, supra,* we said:

"In enacting legislation upon a particular subject, the lawmaking body is presumed to be familiar not only with its own prior legislation relating to that subject, but also with the court decisions construing such former legislation. *In re Levy,* 23 Wn. (2d) 607, 161 P. (2d) 651, 162 A.L.R. 805. . . .

" . . .

"In construing statutes which re-enact, with certain changes, or repeal other statutes, or which contain revisions or codification of earlier laws, resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the legislature, *for, where a material change is made in the wording of a statute, a change in legislative purpose must be presumed. In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015, and cases therein cited; *Great Northern R. Co. v. Cohn,* 3 Wn. (2d) 672, 101 P. (2d) 985; *Longview Co. v. Lynn,* 6 Wn. (2d) 507, 108 P. (2d) 365." (Italics ours.)

Applying these rules to the instant case, we conclude that the legislature intended to remove, as a disqualification for the receipt of unemployment compensation benefits, the limitation provided by the 1943 amendment that good cause be "for reasons related to the work in question" and not "for a personal reason not connected with or related to his work" when it enacted Laws of 1945, chapter 35, § 73, the predecessor to RCW 50.20.050, *supra.* This construction is consistent with the command of RCW 50.01.010, *supra,* that "this title shall be liberally construed

for the purpose of reducing involuntary unemployment and the suffering caused thereby to a minimum."

Despite the legislative history of RCW 50.20.050, Boeing argues that there is strong case precedent for the trial court's conclusion that good cause must be "attributable to or connected with the claimant's employment." The primary cases which Boeing cites in support of this argument are *Woodmen of the World Life Ins. Soc. v. Olsen,* 141 Neb. 776, 4 N. W. (2d) 923 (1924), and *Stone Mfg. Co. v. South Carolina Employment Sec. Comm.,* 219 S. C. 239, 64 S. E. (2d) 644 (1951). We do not find the rationale of these and other cases cited persuasive in light of the legislative history of RCW 50.20.050.

Boeing also contends that, had the legislature intended RCW 50.20.050 to permit the payment of benefits to one who voluntarily leaves his employment, it would not have enacted RCW chapter 50.28, the experience rating system chapter. Boeing argues that, since RCW chapter 50.28 penalizes an employer for his own unemployment, it would be inequitable to charge him for unemployment, as in the instant case, which is not the fault of the employer. Appealing as this argument seems, it cannot override what we have found to be the legislative intent. If the employer feels this consequence is unduly harsh, his redress is to the legislature. Further, it is noted that the Washington experience rating system does not rate each employer separately but rates according to the industry involved. Thus, it appears to us that, since one employer may pay rates caused by another employer, the legislature approved of a system in which separate employers are to be penalized for unemployment which results through no fault of their own.

For the reasons heretofore stated, the trial court erred in concluding that the words "good cause," as used in RCW 50.20.050, *supra,* mean a cause "attributable to or connected with the claimant's employment"; and we hold "good cause" for termination of employment, under the statute, may include compelling personal reasons.

Having so construed the statute, the issue remains for determination as to whether the personal reasons of the claimant for the termination of her employment under the facts of this case were so compelling as to constitute "good cause."

Here, the claimant terminated her employment in order to live with her husband at his domicile in Oakville where he had a teaching position. In the absence of a good reason for her not so doing, it is the duty of the wife to accompany her husband and live at the home he has selected. We stated in the early case of *Buell v. Buell*, 42 Wash. 277, 84 Pac. 821 (1906):

"It is doubtless the law that the husband has the right to choose the domicile for the family, and that it is the duty of the wife to accompany and live with him in the home thus selected, unless there be good reasons for her not so doing. . . ."

See, also *Raytheon Co. v. Director of Division of Employment Sec.*, 344 Mass. 369, 182 N. E. (2d) 293 (1962).

The claimant in the instant case, having terminated her employment because of compelling personal reasons, did so with "good cause" under RCW 50.20.050, *supra.*

The judgment of the trial court overruling the Commissioner's decision is reversed.

OTT, C. J., DONWORTH, FINLEY, ROSELLINI, and HALE, JJ., concur.

HAMILTON, J. (concurring in part, dissenting in part)— I concur with the majority in their conclusion that, based upon the legislative history, the words "good cause," as found in RCW 50.20.050, are not limited to mean those causes which are "attributable to or connected with the claimant's employment." I likewise agree that the term "good cause," as used in the statute, may embrace compelling personal reasons, insofar as such reasons result in involuntary unemployment.

I cannot agree, however, that when an employed wife voluntarily quits steady employment to accompany her

husband to his voluntarily accepted employment in another community, where employment for her is not available, such termination is for such compelling personal reasons as to render her involuntarily unemployed within the contemplation of the Employment Security Act. The 6-week disqualification found in RCW 50.20.050 applies.

I therefore dissent from the majority's disposition of the assignment of error directed to conclusion of law No. 3.

HILL, J. (dissenting)—The idea that persons can voluntarily quit employment which remains available to them because, for personal reasons, they choose to live where employment is not available and yet still qualify for unemployment compensation seemed to the trial court a perversion of the purpose of the legislation. And so it does to me.

The purposes of the act are expressed in its preamble, which says that, because " . . . economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state," that "involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread . . ."

To ameliorate the conditions caused by involuntary unemployment, "which now so often falls with crushing force upon the unemployed worker," is the object of the legislation. But the majority says that the avowed purpose as expressed in the preamble must yield to the specific language used in the act.

The specific language, as set forth in the majority opinion, is

"An individual shall be disqualified for benefits for the calendar week in which he has left work voluntarily without good cause and for the five calendar weeks which immediately follow such week." RCW 50.20.050.

In the light of the purpose of the act, I would say that "good cause" would be circumstances connected with his work, such as working conditions made unbearable by su-

pervisors or foremen—but certainly not just a mere desire to live in some other community.

But the majority says that such an interpretation would be limiting "good cause" for voluntary unemployment to those causes which are "attributable to or connected with the claimant's employment," and that such an interpretation is repudiated by the legislative history.

I find no such repudiation. The legislative history relied upon is that, when the legislature in 1945 repealed all acts relating to unemployment compensation and made a fresh start, the then existing legislation relative to disqualification for benefits was as follows:

"Section 5. *Disqualification for Benefits.* An individual shall be disqualified for benefits:

"(a) For the calendar week in which he has left work voluntarily without good cause *for reasons related to the work in question,* if so found by the Commissioner, and for a period ensuing immediately thereafter of not less than two, nor more than five, weeks as the Commissioner shall determine (in addition to the waiting period)." (Italics ours.) Laws of 1943, ch. 127, § 3.

The 1945 Act[1] omitted the italicized words, and the majority concludes that the legislature therefore disapproved of them. In the light of the preamble and the express purpose of the legislation, it seems more consistent to say that the legislature regarded the omitted words as being redundant and but a restatement of the clear purposes of the act.

On this omission, the Commissioner of the Employment Security Department has, entirely contrary to the express purpose of the act, determined that purely personal reasons for the termination of employment constitute "good cause," and hence no disqualification for benefits.

I decline, on the basis of what seems to me a perfectly proper and natural omission, to approve such an administrative practice.

I would affirm the trial court.

WEAVER, J., concurs with HILL, J.

---

[1] Laws of 1945, chapter 35, § 73.