Honorable Karen Fraser Washington State Senate P.O. Box 40422 Olympia WA 98504-0422
Dear Senator Fraser:
By letter previously acknowledged, you have requested our opinion on the following questions:
 1. Must a municipality have an ownership interest in a tourism-related facility in order to allocate lodging tax revenues received under RCW 67.28.180 and .181 for the operation of that tourism-related facility?
 2. May a municipality spend lodging tax revenue on operating expenses of special events and festivals designed to attract tourists which are operated by non-municipal entities?
 3. May a municipality enter into contracts with tourism promotion agencies that provide advance payment of hotel-motel tax revenues for tourist promotion?
 [original page 2] BRIEF ANSWER
We adhere to our conclusion in AGO 2000 No. 9 that a municipality must have an ownership interest in tourism-related facilities in order to spend lodging tax revenues on the operation of such facilities. A municipality may not spend lodging tax revenues on operating expenses of special events and festivals which are operated by non-municipal entities. Rather, with respect to such events, the municipality may only spend lodging tax revenues on advertising and promotion. A municipality may not provide advance payments of lodging tax revenues to service providers. Payment must be made after the fact, supported by appropriate documentation.
 ANALYSIS 1. Must a municipality have an ownership interest in atourism-related facility in order to allocate lodging taxrevenues received under RCW 67.28.180 and .181 for the operationof that tourism-related facility?
 Statutory background.
RCW 67.28 has evolved considerably since its enactment in 1967. In its initial form, RCW 67.28 simply authorized King County to impose a lodging tax for the purpose of funding the development of stadium facilities. Laws of 1967, Reg. Sess., ch. 236, § 14. In 1970, this authority was extended to the cities of Spokane and Tacoma (Laws of 1970, 2nd Ex. Sess., ch. 89, § 1), and then in 1973 to most other municipalities (Laws of 1973, 2nd Ex. Sess., ch. 34, § 5). In 1973, the Legislature also authorized the development of convention center facilities (Laws of 1973, 2nd Ex. Sess., ch. 34, § 1). In 1979, the Legislature added performing arts centers and visual arts centers to the list of authorized facilities (Laws of 1979, 1st Ex. Sess., ch. 222, § 5). In 1986, certain counties and cities were authorized to develop tall ships (Laws of 1986, ch. 308, § 1). In 1988, certain cities and counties were authorized to refurbish and operate steam railways (Laws of 1988, Ex. Sess., ch. 1, § 24).
In addition to increasing the number of municipalities authorized to impose the lodging tax and broadening the array of facilities that municipalities were authorized to develop, the Legislature also authorized certain activities other than the development of facilities. Thus, for example, in 1979, the Legislature enacted amendments to RCW 67.28 which included, among other things, authorization for municipalities "to pay for advertising, publicizing, or otherwise distributing information for the purpose of attracting visitors and encouraging tourist expansion when a county or city has imposed such tax for such purpose, or as one of the purposes hereunder" (Laws of 1979, 1st Ex. Sess., ch. 222, § 5). In 1986, certain municipalities in "distressed areas" (Laws of 1986, ch. 308, § 1) were authorized to use lodging tax revenues "to develop strategies to expand tourism," which authority in 1990 was extended to all municipalities (Laws of 1990, ch. 17, § 1). Eventually — for a time — certain cities were authorized to use lodging tax proceeds for funding "special events or festivals" (Laws of 1992, ch. 202, § 1), and cities and counties were authorized, under specified conditions, to promote "civic festival[s]" (Laws of 1995, ch. 290, § 1).
[original page 3]
 The 1997 amendments to RCW 67.28.
In 1997, the Legislature enacted numerous amendments to RCW67.28. These amendments repealed jurisdiction-specific grants of authority to impose lodging taxes and to undertake tourism-related activities. The Legislature correspondingly unified the taxing provisions as well as the authorizing provisions for tourism activities. The 1997 amendments included a restatement of the purposes for which lodging tax receipts may be expended and, relatedly, the adoption of several key definitions of operative statutory terms.
We have carefully reviewed the 1997 amendments, as well as the entire legislative history of the relevant sections of RCW 67.28. Suffice it to say that the language of RCW 67.28 is far from clear with respect to a municipality's authority vel non to spend lodging tax receipts on the operations of non-governmentally owned facilities. We acknowledge that reasonable arguments can be made in support of the proposition that municipalities do possess such authority. On the other hand, as evidenced by AGO 2000 No. 9, reasonable arguments can be made to the contrary. In the intervening years since that opinion was issued, the Legislature has not amended RCW 67.28 in a manner that would lead us to alter the conclusion we reached in that opinion. This fact (coupled with the persistent interpretive issues that RCW 67.28 has raised) leads us to conclude that a legislative amendment to RCW 67.28 expressly providing authority for municipalities to expend lodging tax receipts on the operations of non-governmentally owned facilities would be the most efficacious and appropriate manner by which any such state public policy decision could be evidenced.
 2. May a municipality spend lodging tax revenue on operatingexpenses of special events and festivals designed to attracttourists which are operated by non-municipal entities?
The legislative history of municipal authority to fund tourism facilities and events reflects an incremental, even surgical, approach to policy making. As noted above, in its initial form, RCW 67.28 simply authorized King County to develop stadium facilities. Eventually, the Legislature authorized municipalities to provide tourist information[1] and to fund certain kinds of events, in addition to authorizing the development of a wider array of facilities. Thus, for example, in 1992 certain cities were authorized to use lodging tax proceeds for funding "special events or festivals" (Laws of 1992, ch. 202, § 1), and in 1995, cities and counties were authorized under specified conditions to promote "civic festival[s]" (Laws of 1995, ch. 290, § 1).
Significantly, the 1997 amendments to RCW 67.28 eliminated the language that authorized direct expenditures of lodging tax receipts for special events and festivals. As amended, the relevant language of RCW 67.28 now provides that, "All revenue from taxes [original page 4] imposed under this chapter . . . shall be used solely for the purpose of paying all or any part of the cost of tourism promotion, acquisition of tourism-related facilities, or operation of tourism-related facilities." RCW67.28.1815. The only part of this language that is arguably relevant to the question of expenditures for events or festivals is the reference to "tourism promotion." "Tourism promotion" is defined to mean:
 activities and expenditures designed to increase tourism, including but not limited to advertising, publicizing, or otherwise distributing information for the purpose of attracting and welcoming tourists; developing strategies to expand tourism; operating tourism promotion agencies; and funding marketing of special events and festivals designed to attract tourists.
RCW 67.28.080(6) (emphasis added). The Legislature's own language explicitly restricts event and festival-related expenditures to the "marketing" of such activities. There is simply no room to interpret this language.[2]
 3. May a municipality enter into contracts with tourismpromotion agencies that provide advance payment of hotel-moteltax revenues for tourist promotion?
Your third question asks whether a municipality may enter into contracts with tourism promotion agencies that provide advance payment of lodging tax revenues for tourist promotion. Your letter refers to an informal advice memorandum from this office, which concluded that such advance payments are not permitted. Your letter goes on to observe that, "While there is a need for accountability in expenditures, this narrow analysis has been used in several instances in spite of the performance-based contracts, procedures in place to assure that services are[original page 5] provided, and the lack of alternative resources for tourism promotion activities provided to cities and counties, particularly by expressly-formed nonprofits."
We recognize that the "distribution" and "allocation" of lodging tax proceeds to certain non-profit tourism promotion agencies (that is provided for under RCW 67.28.180) creates the potential for confusion regarding the application of RCW42.24.080, to which your letter refers. Nevertheless, rather than resting on a "narrow" reading of RCW 42.24.080, we believe that the conclusion that advance payments to tourism promotion agencies is not permitted follows from a straight-forward application of the plain language of this provision. In pertinent part, this provision reads as follows:
 All claims[3] presented against any county, city, district or other municipal corporation or political subdivision by persons furnishing materials, rendering services or performing labor, or for any other contractual purpose, shall be audited, before payment, by an auditing officer. . . . The form shall provide for the authentication and certification by such auditing officer that the materials have been furnished, the services rendered or the labor performed as described, and that the claim is a just, due and unpaid obligation against the municipal corporation or political subdivision; and no claim shall be paid without such authentication and certification[.]
RCW 42.24.080 (emphasis added).
The above-quoted language by its terms is extremely broad, applying to any "contractual purpose." We are aware of no specific provision that would countermand RCW 42.24.080 and thus permit municipalities to make advance payments of funds to tourism promotion agencies.[4] Indeed, the Legislature has made some narrow exceptions to the general rule against advance payments, but these exceptions do not extend to payments to tourism promotion agencies.[5]
 [original page 6] CONCLUSION
The long and winding road that the Legislature has traveled in developing public policy on the promotion of tourism and the related expenditures of lodging tax receipts has prompted many interpretive questions along the way. Indeed, the fact that this opinion is the third formal opinion that this office has issued in the past ten years on the subject of RCW 67.28 evidences this uncertainty. Reasonable minds can differ on many of these questions. Nevertheless, for the reasons discussed above, we adhere to our conclusion in AGO 2000 No. 9 that a municipality must have a property interest in a facility that supports tourism or accommodates tourist activities in order to spend lodging tax receipts on the operations of such a facility. We also conclude that municipalities are not authorized to spend lodging tax receipts to fund special events or festivals. Finally, we conclude that municipalities may not make advance payments to the providers of tourism-related services.
We trust the foregoing will prove useful to you.
Sincerely,
ROB McKENNA, Attorney General
ROBERT J. FALLIS, Assistant Attorney General
:pmd
[1] In 1979, the Legislature enacted amendments to RCW 67.28, which included, among other things, authorization for municipalities "to pay for advertising, publicizing, or otherwise distributing information for the purpose of attracting visitors and encouraging tourist expansion when a county or city has imposed such tax for such purpose, or as one of the purposes hereunder". Laws of 1979, 1st Ex. Sess., ch. 222, § 5.
[2] See State v. Costich, 152 Wn.2d 463, 470, 98 P.3d 795
(2004) (where language is unambiguous, court gives effect to that language alone; Legislature is presumed to say what it means and mean what is says). In AGO 1995 No. 10, this office discussed the meaning of the then-existing statutory language that authorized lodging tax expenditures for "advertising, publicizing, or otherwise distributing information for the purpose of attracting visitors and encouraging tourist expansion" and for "develop[ing] strategies to expand tourism". AGO 1995 No. 10, at 2. AGO 1995 No. 10 concluded, in part, that the above language could not be read to authorize municipalities to fund special events and festivals; otherwise, the then-existing provisos which the opinion found to authorize expenditures for such events and festivals would be redundant. AGO 1995 No. 10, at 5. The 1997 amendments to RCW 67.28 retained substantially intact, in the definition of "tourism promotion," the above-referenced language. As noted above, however, no provisos or other language authorizing direct expenditures for special events or festivals were included in the 1997 amendments. This seems to have been understood by others at the time, as well. See H.B. Rep. on Substitute S.B. 5867, 55th Leg., Reg. Sess. (Wash. 1997), at 5 (summary of "testimony for" amendments to RCW 67.28 indicates that amendments "will help communities fund promotion activities for festivals and other events."). See also In re Bale,63 Wn.2d 83, 89, 385 P.2d 545 (1963) (Legislature is presumed familiar with own prior legislation; "[I]n construing statutes which re-enact, with certain changes, or repeal other statutes, or which contain revisions [to earlier laws], resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the Legislature, for, where a material change is made in the wording of a statute, a change in legislative purpose must be presumed.") (citations omitted);State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (drafters of legislation are presumed to have used no superfluous words, and courts must accord meaning, if possible, to every word) (citations omitted).
[3] "Claims" is not defined in statute. Thus, it is to be given its ordinary meaning. Dictionaries are an appropriate source for determining that meaning. Davis v. Dep't of Empl. Sec.,108 Wn.2d 272, 737 P.2d 1262 (1987). "Claim" means to ask for especially as a right, to take as the rightful owner, or to assert in the face of possible contradiction. Merriam-WebsterOnLine Dictionary found at http://www.m-w.com/dictionary (visited January 26, 2006).
[4] Your letter refers to certain types of contractual protections which you suggest render unnecessary a prohibition on advance payments. At least up to the present, the Legislature has not found these types of contractual protections to be inconsistent with, or a substitute for, a policy against advance payments to contractors. State agencies are generally prohibited from making advance payments to contractors despite the state's consistent use of a battery of strong contractual protections in favor of its agencies. See RCW 43.88.160(5) (prohibiting advance payments to contractors except for certain maintenance agreements and subscription services).
[5] See RCW 42.24.035 (providing an exception to the usual prohibition on advance payments by public agencies and municipal corporations for payments for publications and periodical subscriptions that are made "in a manner as consistent as possible and practicable with normal and usual business methods, and in the case of subscriptions, for periods not in excess of three years").