[Nos. 28173 to 28187. *En Banc.* April 17, 1941.]

THE TEXAS COMPANY *et al., Respondents,* v. DAVE S. COHN, *as State Director of Licenses, et al., Appellants.*[1]

[1]Reported in 112 P. (2d) 522.

362

*The Attorney General* and *John E. Belcher, Assistant,* for appellants.

*Grosscup, Morrow & Ambler, Eggerman & Rosling, Meier & Meagher, Hyland, Elvidge & Alvord, Hulbert, Helsell & Bettens, Little & Leader,* and *Bogle, Bogle & Gates,* for respondents.

DRIVER, J.—This court, in the case of *State v. Inland Empire Refineries, Inc.,* 3 Wn. (2d) 651, 101 P. (2d) 975, held unconstitutional in its entirety chapter 186, Laws of 1939, p. 581 (Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21] *et seq.*), which levied an excise tax upon distributors of petroleum products at the rate of one-fourth cent for each gallon "withdrawn, sold, distributed or in any manner used by such distributor . . ." The director of licenses thereupon notified the following corporations engaged in the business of selling fuel oil within the state: The Texas Company, Tidewater Associated Oil Company, Sunset Oil Company, Shell Oil Company, Incorporated, Standard Oil Company of California, Union Oil Company of California, General Petroleum Corporation of California, and Richfield Oil Corporation, to qualify as distributors and otherwise to comply with the provisions of the former fuel oil tax law (Title XI, chapter 180, Laws of 1935, p. 749, as amended by chapter 116, Laws of 1937, p. 459), for brevity hereinafter called the 1937 statute.

All of the corporations qualified as requested, but each of them, with one exception, then instituted a suit in equity against certain state officials to enjoin the collection of any tax under the 1937 statute; and, at the same time, brought a companion action at law

against the state to recover all taxes which the corporation had paid within the preceding three-year period under both the 1937 statute and the 1939 act. (The Sunset Oil Company commenced only one action, by which it sought both injunctive relief and the recovery of tax payments.)

These fifteen cases were consolidated for trial. In the equity suits, the superior court entered decrees enjoining the defendants from enforcing any of the provisions of either the 1937 statute or the 1939 act. In the actions at law, also tried before the court without a jury, findings, conclusions, and judgments in favor of the plaintiffs were entered. The defendants have appealed.

The 1939 petroleum products tax law specifically repealed the 1937 statute, but it is the position of the appellants that, when the repealing act was wholly vitiated as unconstitutional by the *Inland* case, its repealing clause also fell. Therefore, they assert, the 1937 statute has never been legally repealed and has remained in full force and effect in contemplation of law, assuming, of course, that it is constitutional.

This position, we think, is sound. It is too apparent to require much comment that the legislature, when it enacted the 1939 act, attempted to set up a new and complete fuel oil tax law in place of the 1937 statute. The earlier law was repealed only to clear the decks and give the new act unobstructed operation and effect. It does not appear that the legislature intended, in any event, to repeal the prior law. Under such circumstances, the repealing clause falls within the unconstitutional statute of which it is a part. 59 C. J. 939; 25 R. C. L. 913, § 166; *In re Rafferty,* 1 Wash. 382, 25 Pac. 465; *North Bend Stage Line v. Department of Public Works,* 170 Wash. 217, 16 P. (2d) 206; *Mazurek v. Farmers' Mutual Fire Ins. Co.,* 320 Pa. 33, 181 Atl.

570, 102 A. L. R. 798. See, also, the annotation following the last cited case in volume 102 A. L. R. 802.

The respondents do not attempt to meet directly appellants' contention as to the survival of the 1937 statute, but assert that it is "quite immaterial" because the trial court correctly held the statute to be unconstitutional and void. The principal contention of the respondents (supported as to its factual premise by the trial court's findings and adopted as a legal conclusion by the court's decrees and judgments) is that the 1937 statute violates the equal protection clause of the fourteenth amendment to the constitution of the United States and the equal privileges and immunities provision of Art. I, § 12, of the constitution of the state, for the reason that it imposes a tax upon distributors of oil fuel without laying a corresponding tax upon distributors of solid fuels, such as coal, coke, wood, and sawdust.

The two kinds of fuel are marketed in competition with each other, and there is no reasonable ground for making a distinction in classification between them for the purpose of taxing the one and exempting the other, the respondents maintain. They confidently assert that our decision in the *Inland* case is determinative in their favor on that point. The trial court has clearly indicated that it also subscribed to that view. Before undertaking a discussion of respondents' contention, we shall, therefore, state our position with reference to that case. To do so adequately, it is necessary that we briefly review its history.

The 1939 act contained a number of exemptions, one of which relieved distributors from payment of the tax on petroleum products "derived from the refining within this state of crude petroleum or crude oil." The state took the position that this exemption was uncon-

stitutional, and that fuel oil refined within the state was subject to the tax.

Acting through its then attorney general, the state instituted the *Inland* case for the purpose of collecting from a domestic refinery taxes on its distribution of locally refined fuel oil. Other companies intervened in the action, and it was consolidated, for the purpose of trial, with two declaratory judgment cases which had been brought by the Great Northern Railway Company and the Weyerhaeuser Timber Company against the state director of licenses to obtain an adjudication of the rights of the companies under the 1939 act. The taxpayers in these consolidated actions maintained that the exemption of locally refined fuel oil and two other exemptions in the 1939 law were not only unconstitutional, but were also inseparable, and their invalidity voided the whole statute.

Both the superior court and this court adopted that view, and the statute was held to be unconstitutional. However, the *Inland* case involved not only the question of the exemptions, but also a number of other constitutional issues presented by the consolidated declaratory judgment actions. As a result, this court was called upon to construe the taxing statute and pass upon complex and difficult questions of constitutional law of far reaching importance in order to predetermine the rights of financially interested taxpayers. Such procedure is permissible and entirely proper, but, from the standpoint of the court, it, nevertheless, entails serious disadvantages, which disadvantages were discussed in the case of *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345, as follows:

"The confirmation [of the power of the courts to declare legislative acts unconstitutional] is reassuring, although wholly unnecessary, but we accept with some doubt and hesitation a procedure where these momentous constitutional questions will, in the future, be

decided in cases where, on the one hand, the plaintiff and interveners are financially interested in striking down the legislative act and are represented by from five to a dozen firms of attorneys, and where, on the other hand, the defendant is only interested *ex officio* in sustaining it and is represented only by the attorney general and such *amici curiae* as may come to his assistance."

We adhere to our holding in the *Inland* case, but we do not regard it as controlling. On its principal, or "exemption," ground of decision, it is clearly distinguishable; and, under the circumstances, we feel that what may be termed its secondary grounds of decision, upon which respondents here rely, should be subjected to a thorough and searching re-examination. The three grounds of decision of the *Inland* case are:

(1) Three exemptions in the 1939 act were construed to be unconstitutional and inseparable from the remainder of the act, and their invalidity vitiated the entire statute.

(2) Certain licensing "conditions" of the statute were held to constitute a constitutionally forbidden burden upon interstate commerce.

(3) The statute was declared to be repugnant to the equal protection clause of the Federal constitution and the privileges and immunities provision of the state constitution, for the reason that it contained an arbitrary and discriminatory classification (oil fuel and solid fuel).

The first ground clearly does not apply to the instant case, for the 1937 statute here under consideration does not contain any of the three exemptions in question.

The second ground, likewise, is not apt, as we shall show later on in this opinion, since the licensing provisions of the 1937 *statute, as construed by this court and as applied to the respondents by the state officials,*

*do not violate the commerce clause of the Federal constitution.*

■■ Ground number three is the one upon which respondents rely in support of their main contention, that the legislature could not lawfully tax distributors of oil fuel without placing a corresponding tax upon distributors of solid fuel (coal, coke, wood, and sawdust), *because the two kinds of fuel and the mechanical contrivances by which they are used are sold in competition with each other.* This contention presents the following basic question:

Does the equal protection clause of the Federal constitution or the equal privileges and immunities clause of the state constitution require generally similar commodities or businesses, which are in competition with each other, to be placed in the same class for excise tax purposes?

On the Federal phase of the question, the following decisions of the supreme court of the United States, we think, are apposite:

*Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578. The state of Kentucky, by statute, levied a tax upon the business of rectifying, compounding, or blending distilled spirits. It was contended that the statute violated the equal protection clause of the Federal constitution because it unjustly and arbitrarily discriminated against domestic rectifiers in favor of three other untaxed groups "engaged in the same business," one of which, it was urged, sold untaxed spirits *"in direct competition* with the spirits of Kentucky rectifiers, or blenders, subject to the tax." (Italics ours.) In that case, certainly, the taxed blended, or rectified, distilled spirits and the untaxed straight distilled spirits were competing commodities, but the taxing act was, nonetheless, upheld as a valid exercise of that "very wide discretion" which must be

conceded to the legislative power of the state in the classification of businesses or occupations for excise tax purposes.

*Tax Commissioners v. Jackson,* 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464. Indiana enacted a chain store law which required operators of stores within the state, under common ownership or management, to pay an annual license fee which progressively increased in amount according to the number of stores so operated. It was urged that the law was repugnant to the United States constitution because there was no reasonable and proper basis for the classification which it contained. The court, in effect, found, upon uncontradicted evidence of the appellee, a chain-store operator, that

"Several department stores in Indianapolis, doing a much larger business than the appellee, pay a tax of only $3 as contrasted with his tax of $5443, *although their business is highly competitive with that of chain stores.*" (Italics ours.)

The court held, nevertheless, that the tax law did not contravene the equal protection clause. Mr. Justice Roberts, speaking for the court, clearly and forcefully stated the principles governing the interrelationship of the constitutionally secured rights of persons to the equal protection of the laws and the power of a state legislature to make classifications for the purpose of taxation, as follows:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap R. Co. v. Pennsylvania,*

134 U. S. 232; *Southwestern Oil Co. v. Texas,* 217 U. S. 114; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Rfg. Co. v. Louisiana,* 179 U. S. 89, or if any state of facts reasonably can be conceived to sustain it. *Rast v. Van Deman & Lewis Co.,* 240 U. S. 342; *Quong Wing v. Kirkendall,* 223 U. S. 59. As was said in *Brown-Forman Co. v. Kentucky, supra,* at p. 573:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. *Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great.* The past decisions of the Court make this abundantly clear." (Italics ours.)

This court has endorsed the foregoing statement by quoting it, with approval, as follows: In whole in *Puget Sound Power & Light Co. v. Seattle,* 172 Wash. 668, 21 P. (2d) 727, and in *Benjamin Franklin Thrift Stores v. Henneford,* 187 Wash. 472, 60 P. (2d) 86; and in substantial part in *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622, and in *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363.

*Magnano Co. v. Hamilton,* 292 U. S. 40, 78 L. Ed. 1109, 54 S. Ct. 599. A statute of the state of Washington imposing a tax of fifteen cents per pound on all butter substitutes sold within the state, was challenged on

several constitutional grounds, one of which was that it denied to vendors of the taxed commodity the equal protection of the laws under the constitution of the United States. The court held that the statute was valid, disposing of the "equal protection" contention with the laconic comment:

"In respect of the equal protection clause it is obvious that the differences between butter and oleomargarine are sufficient to justify their separate classification for purposes of taxation."

*Puget Sound Power & Light Co. v. Seattle,* 291 U. S. 619, 78 L. Ed. 1025, 54 S. Ct. 542. An ordinance of the city of Seattle levied an excise tax upon the business of selling electric light and power within the city. The measure was attacked by a private power company as arbitrary and discriminatory because the power and light distribution system of the city, in practical effect, was not subject to the tax. In the language of the court, it was contended that "constitutional limitations are transgressed only because the tax affects a business with which the taxing sovereign is actively competing." After pointing out substantial differences between a private business and one owned and operated by a municipality, the court observed:

"These differences are not lessened nor the constitutional exaction of uniformity increased because the city *competes with a business which it taxes.* . . .

"It [the fourteenth amendment] does not preclude competition, however drastic, between private enterprises or prevent *unequal taxation of competitors who are different."* (Italics ours.)

The decision of this court upholding the challenged ordinance (*Puget Sound Power & Light Co. v. Seattle,* 172 Wash. 668, 21 P. (2d) 727, *supra*) was affirmed.

In *Great Atlantic & Pac. Tea Co. v. Grosjean,* 301 U. S. 412, 81 L. Ed. 1193, 57 S. Ct. 772, 112 A. L. R. 293, a graduated "chain store" tax law generally similar

to that involved in *Tax Commissioners v. Jackson, supra,* was held to be constitutional and valid.

We have reserved for review out of its chronological order *Heisler v. Thomas Colliery Co.,* 260 U. S. 245, 67 L. Ed. 237, 43 S. Ct. 83, for the reason that it is so strikingly in point. In that case, a Pennsylvania statute imposed a tax upon anthracite coal mined within the state without providing for any corresponding tax upon bituminous coal. The statute was attacked as unconstitutional on grounds which are clearly stated in the following excerpt from the opinion:

"The bill in the case, as far as we are concerned with it, assails the Act of 1921 as offensive to the Fourteenth Amendment of the Constitution of the United States, in that it denies to the Thomas Colliery Company, and other owners and operators of anthracite mines, the equal protection of the laws, because it taxes such owners and anthracite coal, and does not tax the owners of bituminous mines and bituminous coal. The ultimate foundation of the contention is that anthracite coal and bituminous coal are fuels and necessarily, therefore, must be associated in the same class for taxation, in disregard or in diminution of whatever other differences may exist between them in composition, qualities or uses, and that not to so associate them is arbitrary and unreasonable, having the consequences of inequality and illegality, and, therefore, within the ban of the Constitution of the United States."

The court held that the state legislature had not exceeded its taxing powers. Classification is permissible, the court said, if it is reasonably related " 'to some permitted end of governmental action,' " or has some reasonable foundation " 'in "the purposes and policy of taxation." ' " (Italics ours.) The contention that the classification was bad because the two kinds of coal, anthracite and bituminous, were marketed in competition with each other, was considered by the court and definitely rejected by it as follows:

*"The fact of competition may be accepted.* Both coals, being compositions of carbon, are of course capable of combustion and may be used as fuels, but under different conditions and manifestations; *and the difference determines a choice between them even as fuels.* By disregarding that difference and the greater ones which exist, *and by dwelling on competition alone,* it is easy to erect an argument of strength against the taxation of one and not of the other. *But this may not be done. The differences between them are a just basis for their different classification;* and the differences are great and important. They differ even as fuels; they differ fundamentally in other particulars. Anthracite coal has no substantial use beyond a fuel; bituminous coal has other uses. Products of utility are obtained from it. The fact is not denied and the products are enumerated, and the extent of their use." (Italics ours.)

If the words "fuel oil" were inserted in the foregoing quotation in place of "anthracite coal," and "solid fuel" were substituted for "bituminous coal," its reasoning would apply with undiminished force and persuasiveness to the case at bar. Respondents contend that, since the 1937 statute, in effect, taxes only fuel oil which is to be used *for the generation of heat or power,* the fact that it has other uses is immaterial and furnishes no reasonable basis for distinguishing it from solid fuels. However, in that connection, we think it is a material circumstance that the *untaxed solid fuels* have uses other than as fuels. In the *Heisler* case, it was the fact that the *untaxed bituminous coal* had other uses which the court considered significant. In the instant case, solid fuels have many other uses. Coal is used in the manufacture of gas; coke is utilized extensively in metallurgy; sawdust is used as insulating material and in making wood plastics; and wood is used for the manufacture of paper pulp and as lumber and shingles in the almost innumerable ramifications of the building and construction industries.

We pass now to the question of the validity of the 1937 statute under the state constitution. On that question, the decisions of the United States supreme court which we have cited are applicable, since this court regards the equal privileges and immunities provision of Art. I, § 12, of the state constitution and the equal protection clause of the fourteenth amendment to the constitution of the United States as substantially identical.

In *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209, it was said that "The provisions of the Federal and the state constitutions relative to the equal protection of the laws and due process of law are substantially the same."

To the same effect is the following quotation from *State v. Hart*, 125 Wash. 520, 217 Pac. 45, where the only question presented was whether a tax law violated the equal protection clause of the Federal constitution and the privileges and immunities provision of the state constitution:

"We have not deemed it necessary to discuss separately appellant's claims of right under the state and Federal constitutions, being of the opinion that the reason and the result to be reached would necessarily be the same, in view of the manifest identity in substance of the rights guaranteed by the respective provisions thereof."

Each of the following cases: *Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18; *Supply Laundry Co. v. Jenner*, 178 Wash. 72, 34 P. (2d) 363, and the *Inland* case, without specific comment, tacitly recognizes the substantial identity of the requirements of the state and Federal constitutional provisions in question by indiscriminately discussing and disposing of them as one.

Moreover, in its own decisions involving the power of the legislature to make classifications in excise tax laws, this court has indicated that it does not regard

competition as a circumstance of controlling significance.

In *Allen v. Bellingham,* the validity of an ordinance of the city of Bellingham, which placed a license, or occupation tax, upon the owners of jitney busses, was challenged. This court held that the ordinance did not violate the Federal or state constitution, although operators of auto stages, sight-seeing automobiles, taxicabs, and street cars, manifestly in competition with jitney busses, were not subject to the tax.

In *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016, a retail sales tax law was upheld as a proper exercise of the broad discretion vested in the legislature to make classifications for excise tax purposes. It was there contended that the law was unconstitutional because it taxed sales of foods served to patrons of restaurants, but exempted sales of fresh milk, raw fruits and vegetables, and butter, eggs, cheese, and bread made by retail dealers for off the premises consumption.

In *Benjamin Franklin Thrift Stores v. Henneford,* 187 Wash. 472, 60 P. (2d) 86, a law which imposed a tax upon the distribution or transfer of merchandise from a warehouse to a group of two or more stores without placing a corresponding tax upon such distribution or transfer to a single store, was held to be constitutional and valid, although, as a matter of common knowledge, chain stores and so-called independent stores directly compete with each other.

In considering whether, in a particular case, a legislative classification exceeds the constitutional powers of the lawmakers, it should be borne in mind that there is a well-established distinction between tax laws and regulatory laws. The legislature has broader discretion and greater power in making classifications for taxation than it has for regulation. This

distinction has been recognized by this court in *Spokane v. Macho*, 51 Wash. 322, 98 Pac. 755, 30 Am. St. 1100, 21 L. R. A. (N. S.) 263; *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207; and *Sumner v. Ward*, 126 Wash. 75, 217 Pac. 502. In the last cited case, it was said that "an ordinance may be valid if its object is revenue, although invalid if its object is regulation."

■ The familiar rule that legislative classification, in order to come within constitutional limitations, must bear some reasonable relation to the object of the law in which it appears, originated in cases construing regulatory laws, where it has a natural and logical application. A statute prescribing a regulation in the exercise of the police power has a definite object which concerns the public health, safety, morals, or the like. If such a statute is not universal in its application, but applies only to a particular class, then, in order to satisfy constitutional requirements, the regulation of those within the class, as distinguished from those excluded therefrom, must tend to accomplish the object of the statute. When the rule is applied to a tax law, however, it should be done with due appreciation of the fact that usually the principal object of such a law, and very often the sole object, is to raise revenue for the support of the taxing government. Thus, the state may constitutionally tax one class and exempt other classes if the classification reasonably tends, in some lawful way, to facilitate the raising of revenue.

By way of illustration, let us suppose that a state enacts a law solely as a regulatory health measure, prohibiting, or substantially restricting, the sale of a butter substitute. The classification inherent in such a law would be invalid if it did not bear some reasonable relation to the preservation or advancement of the public health, the object of the law; in other

words, it must appear that the butter substitute is, in some way, unwholesome or deleterious to health. On the other hand, if the state, as a revenue measure, should place a tax upon a butter substitute without laying a corresponding tax on butter, such a classification may be sustained as constitutional on the *sole ground that there is a substantial difference between the two commodities*, just as it was in *Magnano Co. v. Hamilton*, 292 U. S. 40, 78 L. Ed. 1109, 54 S. Ct. 599, *supra*, even though it be conceded, as it was in that case, that the particular butter substitute is a pure, nutritious, and wholesome food.

On this point we call attention to the following cases: *Watson v. State Comptroller*, 254 U. S. 122, 65 L. Ed. 170, 41 S. Ct. 43; *New York Rapid Transit Corp. v. New York*, 303 U. S. 573, 82 L. Ed. 1024, 58 S. Ct. 721; and *Madden v. Kentucky*, 309 U. S. 83, 84 L. Ed. 590, 60 S. Ct. 406, 125 A. L. R. 1383.

In the first case, the legislature of New York had enacted a transfer or inheritance tax that differentiated between property on which certain taxes had been paid in the decedent's lifetime and property on which no such taxes had been paid. It was urged that this was an arbitrary classification without any reasonable basis for its support. In answer to this contention, the court said:

"Any classification is permissible which has a reasonable relation to some permitted end of governmental action. It is not necessary, as the plaintiff in error seems to contend, that the basis of the classification must be deducible from the nature of the things classified,—here the right to receive property by devolution. *It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.'* [Citing cases.] And what classification could be more reasonable than to distinguish, in imposing an inheritance or transfer tax, between property which had during the decedent's life borne

its fair share of the tax burden and that which had not?" (Italics ours.)

The second case, *New York Rapid Transit Corp. v. New York,* involved the constitutionality of a local tax law of the city of New York which exacted an excise tax based upon gross income for the privilege of engaging in the public utility business in that city. The local law, as well as its enabling state statutes, disclosed by its title and content that the revenue from the tax was to be used for the relief of the unemployed. The complaining taxpayer contended that, since the object of the law was relief of the unemployed and the taxed public utilities were not responsible for unemployment, at least no more so than other businesses, the attempted classification was arbitrary and invalid. With reference to such contention, the court said:

"In *Colgate v. Harvey,* 296 U. S. 404, it was recognized that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation' (p. 423) but it was said (p. 424) that 'the object of the act . . . simply is to secure revenue.' In *Stebbins v. Riley,* 268 U. S. 137, *Royster Guano Co. v. Virginia,* 253 U. S. 412, and *Air Way Appliance Corp. v. Day,* 266 U. S. 71, the rule contended for by the Corporation was recognized but with no intimation that the 'object' was considered to be the purpose for which the proceeds of the tax were spent. *The 'object' of the Local Laws under consideration, as in the case with most tax statutes, was obviously to secure revenue.*" (Italics ours.)

The challenged tax law was upheld.

In the third and last of the cited cases, *Madden v. Kentucky,* a state by statute placed an annual *ad valorem* tax on deposits of its citizens in banks outside of the state at a rate greatly in excess of the rate of a corresponding tax upon deposits in banks within

the state. It was contended that there was no reasonable basis for such a classification, and that it was obnoxious to the Federal equal protection clause. The court, holding the statute to be within constitutional limitations, said:

"Here as in the *Watson* case the classification may have been 'founded in "the purposes and policy of taxation." ' The treatment accorded the two kinds of deposits *may have resulted from the differences in the difficulties and expenses of tax collection.*" (Italics ours.)

Respondents have cited a considerable number of cases in addition to the *Inland* case in support of their contention that the 1937 statute contains an arbitrary and discriminatory classification which violates the Federal and state constitutions. We shall now undertake to review them briefly, limiting the discussion, however, in order to avoid undue extension of this opinion, to the ones which have controlling, rather than persuasive, force as authority; that is to say, the decisions of the United States supreme court and of this court.

The case of *State v. Hart,* 125 Wash. 520, 217 Pac. 45, seems to have been cited in support of respondents' contention only because of its enunciation of the general rule that the legislature may constitutionally make classifications for excise tax purposes only so long as there is some reasonable basis for such classifications, and that all within the class must be treated alike. This court there held that a statute imposing a tax upon distributors of gasoline was constitutional, the taxing of the first seller of gasoline after it has been brought into the state without taxing subsequent vendors being considered a proper and reasonable classification.

*State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P.

(2d) 91, likewise does not support respondents' contention. That case involved the constitutionality of the 1933 occupation tax law, which imposed a tax on the gross income of certain kinds of business, but (after veto of certain sections by the governor) exempted farmers, members of the professions, salaried persons, wage earners, landlords, and persons engaged in the mortgage loan business. This court held that the classification was permissible and the law valid. It was pointed out that the legislature has very broad powers in making classifications for excise tax purposes, and the identical excerpt from *Brown-Forman Co. v. Kentucky*, 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578, *supra*, which is contained in our quotation from *Tax Commissioners v. Jackson, supra*, was quoted with approval.

In *Supply Laundry Co. v. Jenner*, 178 Wash. 72, 34 P. (2d) 363, *supra*, the occupation tax, after it had been amended in the extraordinary session of the legislature of 1933, was again upheld as constitutional.

The case of *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101, held that the statute there involved was unconstitutional. It was, however, a purely regulatory law prescribing certain regulations for fishing within the waters of the state. The section which was challenged as invalid, in effect, permitted fishing with gill nets by persons who had held gill net licenses for either the year 1932 or 1933, but prohibited all others from so doing. This classification was held to be arbitrary and without any reasonable basis. The object of the regulatory statute was clearly to further conservation of the fish resources of the state, and the exemption of gill net fishermen who happened to have had licenses to fish by that method in certain prior years, did not bear any reasonable relation to

such object. That was the basic reasoning underlying the decision in the *Bacich* case.

*Seattle v. Dencker,* 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446, also cited by respondents, may be distinguished from the present case. There, this court held that a city ordinance which placed a license tax upon the sale of goods by any automatic vending device without taxing sales of similar goods by the usual method, violated the equal privileges provision of the state constitution. The classification was considered arbitrary because its only basis was a difference in the mode of doing the same kind of business. Automatic device sales were taxed, while hand sales were not taxed. The case did not involve the question of differences between commodities sold.

The case of *Pearson v. Seattle,* 199 Wash. 217, 90 P. (2d) 1020, upon which respondents particularly rely, is clearly distinguishable, as the ordinance of the city of Seattle there involved was considered solely as a regulatory measure. This court, in effect, held that, since all commodities, including fuels, were subject to a general "weights and measures" ordinance, the city could not legally single out fuel oil dealers and impress upon them an additional regulation having substantially the same purpose. The city contended that the challenged ordinance should be construed as a revenue measure, but the court rejected the contention and invoked the more stringent rule which applies to regulatory laws, *because of the language of the ordinance itself, which definitely and emphatically declared that it should be regarded as a police regulation.* In this connection, we direct attention to the following excerpt from the opinion:

"The ordinance (No. 67614) expressly declares in two of its sections that it is not a revenue measure; and

in three separate places in the ordinance, quoted in the earlier portion of this opinion, it is provided that the ordinance shall be deemed and construed to be a police measure. The intention of the city council so clearly appears from the face of the ordinance that there can be no question as to the intention of the city council; there is no room for construction. . . .

"It is clear that the ordinance is discriminatory in singling out a particular business and seeking to impose upon it *special regulations* when the ground had otherwise been fully covered by existing laws. The city may not, as it has attempted by ordinance No. 67614, impose a revenue tax under the guise of a police regulation." (Italics ours.)

Respondents cite two decisions of the supreme court of the United States. One is *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389, 72 L. Ed. 927, 48 S. Ct. 553. There, the court held invalid a state statute which taxed the gross receipts of corporations derived from the operation of taxicabs within the state, but did not tax the receipts of individuals and partnerships engaged in the same business. The following excerpt from the opinion discloses the reasoning which supported the conclusion that the classification of the taxing statute violated the equal protection clause:

"In effect § 23 divides those operating taxicabs into two classes. The gross receipts of incorporated operators are taxed while those of natural persons and partnerships carrying on the same business are not. The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. *The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed.*" (Italics ours.)

*Ohio Oil Co. v. Conway,* 281 U. S. 146, 74 L. Ed. 775, 50 S. Ct. 310, is the other United States supreme court case cited by respondents. The state statute there

under attack imposed a severance tax upon crude petroleum at rates which varied in accordance with the gravity of the oil. It was urged that, in practical operation, the tax was unjustly discriminatory because the value of different kinds of oil did not vary in accordance with its gravity. The court held, however, that the classification was proper and constitutionally permissible under the equal protection clause of the Federal constitution. The case does not in any respect support respondents' position.

We have reviewed all of the cases, eight in number, of the United States supreme court and of this court cited by respondents in support of their contention now under consideration. Two of them involved regulatory, rather than tax, laws and are distinguishable for that reason. Of the remaining six, only two adjudged a challenged statute or ordinance to be unconstitutional; and, in each of those two cases, the objectionable classification was based solely upon a difference in the method of doing business. In *Seattle v. Dencker*, automatic device sales were taxed, while hand sales were not taxed; and, in *Quaker City Cab Co. v. Pennsylvania,* corporate operation of taxicabs was taxed, but individual or partnership operation was exempted. As we have pointed out, those two cases are clearly distinguishable from the case at bar. Moreover, later decisions of the courts by which they were decided have, to say the least, not strengthened their positions as authorities. In the chain store cases and in *Puget Sound Power & Light Co. v. Seattle,* both the United States supreme court and this court upheld classifications for excise tax purposes which were based solely on a difference in the method of operation of a particular kind of business.

On the other hand, at least three cases of the supreme court of the United States, heretofore cited

in this opinion, with which the decisions of this court are in accord, are directly in point. They hold that generically similar commodities sold in competition with each other may constitutionally be separately classified for excise tax purposes as follows: *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578, rectified, or blended, distilled spirits and straight, distilled spirits; *Heisler v. Thomas Colliery Co.,* 260 U. S. 245, 67 L. Ed. 237, 43 S. Ct. 83, anthracite coal and bituminous coal; and *Magnano Co. v. Hamilton,* 292 U. S. 40, 78 L. Ed. 1109, 54 S. Ct. 599, oleomargarine and butter.

Respondents assert that the cases just cited are distinguishable on the ground that they involve "no companion excise occupational tax for doing business and no companion excise compensation tax." They point out that, in this state, distributors of all fuels must pay an occupational tax, and consumers of all fuels must pay a compensating use tax, but fuel oil distributors and fuel oil users must also pay the tax imposed by the 1937 statute. They maintain that this added burden, which, according to their computation, is equivalent to a tax of ten per cent, is unfair, discriminatory, and unconstitutional.

Manifestly, the legislature intended to impose an additional tax burden upon distributors of fuel oil when it enacted the 1937 statute, because it clearly expressed that intention in the statute itself. Chapter 116, p. 459, § 1, provides that the tax of one-fourth cent a gallon shall be levied and collected *"in addition to any other taxes provided by law."* (Italics ours.)

Respondents' contention, then, logically leads right back to our basic question, namely: Did the legislature have the constitutional power to classify separately for excise tax purposes, oil fuel and solid fuel, and the businesses of selling them?

If the power existed, then certainly the legislature had the right to exercise it by taxing one class and exempting the other, or by placing unequal tax burdens upon them. What possible difference could it make whether the unequal tax be imposed singly or in combination with preexisting equal and lawful taxes? And the mere fact that the tax inequality is pronounced would not necessarily affect the validity of the taxing statute. If the classification is within constitutional bounds, the inequality may be carried even beyond the threshold of oppression, provided, of course, that the tax is *bona fide* and not inherently oppressive. For relief from such inequality, the taxpayer should look to the legislature rather than to the courts. *Magnano Co. v. Hamilton, supra.* In that case, the added tax burden imposed upon oleomargarine by a state statute was fifteen cents a pound, much higher in terms of percentage of value than the burden upon fuel oil under the 1937 statute; and the United States supreme court there said:

"The point may be conceded that the tax is so excessive that it may or will result in destroying the intrastate business of appellant; but that is precisely the point which was made in the attack upon the validity of the ten per cent. tax imposed upon the notes of state banks involved in *Veazie Bank v. Fenno,* 8 Wall. 533, 548. This court there disposed of it by saying that the courts are without authority to prescribe limitations upon the exercise of the acknowledged powers of the legislative departments. '*The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.*'" (Italics ours.)

Furthermore, if there is a valid reason for placing fuel oil in a separate excise tax class, then the legislature may impose double taxation upon it

or upon the business of selling it without violating the fourteenth amendment to the Federal constitution. *St. Louis S. W. R. Co. v. Arkansas,* 235 U. S. 350, 59 L. Ed. 265, 35 S. Ct. 99; *Fort Smith Lumber Co. v. Arkansas,* 251 U. S. 532, 64 L. Ed. 396, 40 S. Ct. 304; *Shaffer v. Carter,* 252 U. S. 37, 64 L. Ed. 445, 40 S. Ct. 221; and *Swiss Oil Corp. v. Shanks,* 273 U. S. 407, 71 L. Ed. 709, 47 S. Ct. 393. Likewise, there is no provision of the state constitution which prohibits double taxation. See *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363, *supra,* wherein this court said:

"Appellants finally contend that to impose the tax upon insurance agents would result in double taxation, inasmuch as the agent receives his commission in the form of a percentage of the premiums, which are already taxed under Rem. Rev. Stat., § 7071. *As already stated, double taxation is not necessarily unlawful. There is no constitutional inhibition against it in this state.*" (Italics ours.)

The applicable general principles governing the power of the legislature to make classifications for excise tax purposes, as announced by the cases which we have cited in this opinion, may be summarized as follows:

A state legislature has very broad discretion in making classifications in the exercise of its taxing powers. A classification of commodities, businesses, or occupations, for excise tax purposes, under which the classes are taxed at unequal rates, or one class is taxed and another is exempted, will be upheld as constitutional if it is not arbitrary nor capricious and rests upon some reasonable basis of difference or policy. The difference between the classes need not be great. It may consist of physical and chemical dissimilarity of commodities or difference in the character or manner of their uses. Classification may also

be permissible if it is reasonably related to some lawful taxing policy of the state, such as greater ease or economy in the administration or collection of a tax, the selection of a fruitful source of revenue with the exemption of sources less promising, or the equalization of the burdens of taxation. If any such reasonable basis for the classification exists, or conceivably may exist, then the circumstance that there is competition between a commodity or business which is taxed and some commodity or business which is not taxed, does not materially affect the validity of the classification.

Respondents, in their brief, make this statement, and they italicize it for emphasis:

*"In all the fuel oil litigation that has been passed upon in this state and in all the briefs submitted with that litigation (including this case), we have yet to find any suggested reason for discriminating between fuel oil and solid fuels for taxation classification."*

The comment is quite pertinent because it is a well-settled rule, stated in a number of the cases which we have heretofore cited, that an excise tax law involving classification will be upheld *if there is any conceivable basis for its support.* We think there are many sound reasons for differentiating oil fuel from solid fuel. We shall mention some which readily come to mind:

(1) Oil fuel and solid fuel differ substantially in physical form and in chemical composition.

(2) They differ in the methods of use as fuels. Oil fuel requires a distinctive type of apparatus, and a consumer can not use coal, coke, wood, or sawdust in a heating plant designed for use of oil fuel.

(3) Oil fuel is sold under a simple unit of measure, the gallon, whereas solid fuels are marketed under many different units of both measure and weight.

The oil fuel usually is stored in quantity in tank containers and is sold by only a limited number of distributors, while the solid fuels are sold by numerous retail dealers, including a host of small operators and individual wood cutters. Therefore, it would be easier and less costly to administer and to collect a tax on fuel oil distributors than a tax on distributors of solid fuels.

(4) No crude petroleum from which fuel oil is refined is produced within the state. On the other hand, the solid fuels are, for the most part, domestic products; and sawdust and, to some extent, wood fuel are by-products in the manufacture of lumber. Conceivably, the legislature may have concluded that, since solid fuels indirectly substantially contribute to the public revenues through taxes levied on coal and timber lands and on the properties and earnings of the coal mining and lumber industries of the state, a special exaction should be imposed upon fuel oil, which does not make comparable indirect tax contributions.

(5) The solid fuels have many uses, other than as fuels, which we have already enumerated.

(6) The legislature may reasonably have considered that, on the whole, the users of fuel oil are in a higher income class than users of solid fuels, and that a special tax on the former would, therefore, conform to the time-honored principle that tax burdens should be distributed in accordance with ability to pay.

These readily conceivable grounds of distinction bear a reasonable relation to the "purpose and policy of taxation," and are capable of sustaining the validity of a classification for excise tax purposes under the authorities which we have cited. The 1937 statute is not repugnant to the equal protection clause of the

Federal constitution or to the equal privileges provision of the state constitution.

The trial court also found that the 1937 statute violated the commerce clause of Art. I, § 8, of the United States constitution.

The tax prescribed by the 1937 statute, in its own language, is "an excise tax upon every distributor at the rate of one-quarter (¼) cent for each gallon of fuel oil *sold, distributed, or withdrawn by him in the State of Washington."* (Italics ours.) Laws of 1937, chapter 116, p. 459, § 1.

By the overwhelming weight of authority, a tax upon such intrastate activities as the sale, withdrawal, or distribution of a commodity moving in interstate commerce, after it has come to rest in the taxing state and its interstate voyage has ended, whether or not it remains in the original package, does not violate the interstate commerce clause so long as there is no discrimination against the commodity because of its origin in another state. *Eastern Air Transport v. South Carolina Tax Commission,* 285 U. S. 147, 76 L. Ed. 673, 52 S. Ct. 340; *Nashville, C. & St. L. R. Co. v. Wallace,* 288 U. S. 249, 77 L. Ed. 730, 53 S. Ct. 345, 87 A. L. R. 1191; *Edelman v. Boeing Air Transport,* 289 U. S. 249, 77 L. Ed. 1155, 53 S. Ct. 591; *Monamotor Oil Co. v. Johnson,* 292 U. S. 86, 78 L. Ed. 1141, 54 S. Ct. 575; *Henneford v. Silas Mason Co.,* 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524; and *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876.

Respondents do not claim that the tax imposed by the 1937 statute directly violates the commerce clause. Their position is that the clause is violated by its licensing provisions, which require a person to obtain a license, pay a license fee, and furnish a bond to qualify as a distributor. They point out (add-

ing italics for emphasis as indicated) that the statute defines a distributor, *inter alia,* as a person who

" . . . imports . . . [any fuel oil] into this state and *stores,* withdraws, sells, distributes, or in any manner uses the same in this state *whether in the original package or container* in which it is imported or otherwise; . . . " Laws of 1937, chapter 116, p. 460, § 2 (b).

And they contend, in the language of their brief, that:

"To require respondents to obtain a license before they may import and simply store the oil, and to classify them as distributors by reason of the mere importation and storage amounts to a regulation of, and the imposition of an unlawful burden upon, interstate commerce."

To be a distributor under the statutory definition to which respondents refer, one must both *import* and *store.* The privilege of storing within the state a commodity brought in from another state after the interstate transportation has terminated, may lawfully be subjected to an excise tax. *Greg Dyeing Co. v. Query,* 286 U. S. 472, 76 L. Ed. 1232, 52 S. Ct. 631, and cases therein cited, and *Henneford v. Silas Mason Co., supra.* In the last cited case, the United States supreme court said:

"A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate."

In *Great Northern R. Co. v. Cohn,* 3 Wn. (2d) 672, 101 P. (2d) 985, this court held that the legislature, in both the 1937 statute and the 1939 act, had restricted the tax to those engaged in the business of *selling* fuel oil; and that a railway company which brought fuel oil into the state and stored it solely for its own use, was not a distributor within the statutory definition of

the term. At the time the respondents in the present case were required by the state director of licenses to qualify as distributors under the 1937 statute, *each of them was engaged in the business of selling fuel oil within the state*. Respondents were not, therefore, compelled to obtain a license to "import and simply store the oil." Rather, they were required to procure licenses for importation and storage connected with, and an integral part of, their intrastate business of selling fuel oil.

As supporting authority, the respondents rely solely upon the interstate commerce ground of decision of the *Inland* case (the second ground in our summary in the fore part of this opinion) and the cases therein cited. The opinion in that case devotes but one short paragraph to the ground of decision in question. It is as follows:

"Chapter 186, Laws of 1939, imposes a tax upon any person who acquires within the state petroleum products from any person importing same into the state, and upon any person who imports into the state and withdraws, sells, distributes, or in any manner uses the products within this state. The statute further requires such persons to pay a fee, file a surety bond, obtain a license, etc., as distributors. Those conditions constitute an unlawful burden on interstate commerce, hence unconstitutional. [Citing authorities.]"

As we have already pointed out, the *Inland* case, as it came before this court, was, in effect, a declaratory judgment action. Furthermore, none of the parties in that case was importing fuel oil in connection with the business of selling the same within the state. The original defendant and the intervening oil company were both operating domestic refineries, and the corporate taxpayers which brought the two consolidated declaratory judgment actions were importing oil exclusively for use in their own businesses.

We do not regard the *Inland* case as controlling on the interstate commerce question here involved. We think the quoted paragraph from the opinion in that case may be reasonably construed to mean merely that the licensing requirements of the 1939 act, under the circumstances there presented, appeared to be capable of a construction and application which would unlawfully burden interstate commerce. In the present case, on the other hand, there is a different situation: The 1937 statute was in effect and operation, and was actually administered by the state officials, for two years prior to its abortive repeal in the 1939 session of the legislature. As the statute has been construed by this court and administered and applied to the respondents, its licensing provisions clearly do not directly and substantially burden interstate commerce. Similar licensing provisions were upheld as valid under the commerce clause in *Hartford Accident & Indemnity Co. v. Illinois,* 298 U. S. 155, 80 L. Ed. 1099, 56 S. Ct. 685, and *Milk Control Board v. Eisenberg Farm Products,* 306 U. S. 346, 83 L. Ed. 752, 59 S. Ct. 528.

In each of the law actions, the trial court made a separate finding of the amount of taxes which the respondent (plaintiff) had paid on fuel oil used in the conduct of its own business within the state. Respondents claim that, regardless of the validity of the 1937 statute, they are severally entitled to recover such amounts.

The original fuel oil tax statute, Laws of 1935, chapter 180, Title XI, p. 749, § 78, provided for a gallonage tax upon every distributor for each gallon "sold, distributed, withdrawn or *used* by him . . ." (Italics ours.) The amendatory statute, Laws of 1937, chapter 116, p. 459, here involved, imposed a tax at the same rate upon every distributor "for each gallon

of fuel oil sold, distributed, or withdrawn by him . . . " Thus, the amendatory act omits "use" by a distributor as a taxable activity.

We are mindful that the 1937 statute also taxes oil "withdrawn" by a distributor. However, since the 1935 law expressly taxed either withdrawal or use, while the 1937 amendatory statute retained the word "withdrawn" but omitted "use" from its list of taxable activities, and, inasmuch as this court, in *Great Northern R. Co. v. Cohn, supra,* construed the 1937 statute to apply only to persons engaged in the business of selling fuel oil, all others being exempt from any tax on use, we are of the opinion that the term "withdrawn" in the 1937 statute was not intended to apply to withdrawal by a distributor for its own use. It seems more reasonable to suppose that the legislature intended withdrawal to be taxable only when effected in connection with, or for the purpose of, sale or distribution.

In some of the actions at law, the trial court also found that the respondents (plaintiffs) had paid taxes under the 1939 act on a number of petroleum products which were either not included or were exempted under the provisions of the 1937 statute. As we stated at the outset of this opinion, when the 1939 act was vitiated in its entirety by the decision of this court in the *Inland* case, its clause repealing the 1937 statute was also invalidated, so that the earlier act never was legally repealed, but, in contemplation of law, continued in effect. Therefore, while respondents are liable for all taxes exacted by the 1937 statute manifestly they should not be held for any additional tax under the void 1939 act.

In the law action brought by the Union Oil Company of California, No. 28187, it was stipulated by the parties, and found by the court, that part of

the taxes paid by respondent (plaintiff), as shown in its exhibit No. 38, was on account of fuel oil which it had transported from another state in tank steamers and delivered directly therefrom to intrastate storage facilities of buyers; and that the buyers bought the oil exclusively for their own use and had no interest therein prior to delivery, and the respondent had no interest therein after delivery. In *Great Northern R. Co. v. Cohn, supra,* as to interstate tanker deliveries of fuel oil made by an oil company in substantially the same manner, we held that the company was not a distributor within the meaning of the 1939 statute and was not liable for the tax. That case is squarely in point.

The trial court found that all the tax payments involved in the instant case were made by respondents involuntarily under duress and compulsion to avoid the severe civil and criminal penalties prescribed by the taxing statutes and to forestall seizure of their property and imprisonment of their officers and agents. Appellants maintain that the payments were, in legal effect, voluntary and cannot be recovered. In *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694, wherein the trial court found that fuel oil excise taxes had been paid under duress and compulsion and under circumstances quite similar to those in the case at bar, this court held that such tax payments were involuntary and could be recovered by the taxpayer in an action against the state. The cited case is apposite and is here controlling.

For the reasons which have been stated, it is our conclusion that enforcement of the 1937 statute by the appellants should not be enjoined, and that the respondents are not entitled to any recovery against the state in their actions at law except as follows:

Each respondent is entitled to recover the amount which the trial court found it had paid to the state in taxes on fuel oil used in the conduct of its own business;

Each respondent affected is entitled to recover the amount which the trial court found it had paid to the state in taxes under the Laws of 1939, chapter 186, p. 581, on petroleum products which were not subject to tax under the 1937 statute;

The respondent Union Oil Company is entitled to recover the amount which the trial court found it had paid in taxes to the state on interstate shipments of fuel oil delivered by tankers directly to storage facilities of the buyers within the state.

All of the fifteen causes consolidated on this appeal, including both the actions at law and the suits in equity, are remanded with direction to the superior court to modify the decrees and judgments in accordance with this opinion.

ROBINSON, C. J., BEALS, and JEFFERS, JJ., concur.

SIMPSON, J., dissents.

BLAKE, J. (concurring in part and dissenting in part)—I think that all that is said in the majority opinion may be said with equal force in support of the constitutionality of chapter 186, Laws of 1939, p. 581 (Rem. Rev. Stat. (Sup.), § 8370-78a [P. C. § 7029k-21] *et seq.*). In effect, the majority hold that act valid except for the provision exempting from its operation oil refined in this state.

For the reasons stated in the dissenting opinion in the case of *State v. Inland Empire Refineries, Inc.,* 3 Wn. (2d) 651, 101 P. (2d) 975, I am of the view that the attempted exemption was abortive, and did not affect the validity of that act. I think, therefore, the decision in the *Inland Refineries* case should be re-

pudiated in its entirety, and the judgments in the instant cases should be reversed in every aspect.

MAIN, J., concurs with BLAKE, J.

MILLARD, J. (dissenting)—Chapter 186, Laws of 1939, p. 581, which repealed chapter 180, Laws of 1935, p. 749, as amended by chapter 116, Laws of 1937, p. 459, imposed upon each person engaged in the distribution of fuel oil an excise tax upon such distributor of one-fourth of one cent for each gallon of fuel oil withdrawn, sold, distributed, or in any manner used by such distributor. In *State v. Inland Empire Refineries, Inc.*, 3 Wn. (2d) 651, 101 P. (2d) 975, we held that chapter 186, Laws of 1939, was unconstitutional, under the fourteenth amendment to the Federal constitution and Art. I, § 12, of the state constitution, in its entirety. Thereafter, the director of licenses of this state notified the Texas Company, Tidewater Associated Oil Company, Sunset Oil Company, Shell Oil Company, Standard Oil Company of California, Union Oil Company of California, General Petroleum Corporation of California, and Richfield Oil Corporation, that they would be required to again qualify as distributors under the provisions of Title XI, chapter 180, Laws of 1935, as amended by chapter 116, Laws of 1937.

Each of the corporations listed above qualified under the 1935 amended act, as required by the notice to them by the director of licenses, and then commenced separate suits (fifteen in all) against certain state officers to enjoin the collection of any tax under the act. At the same time, each of those corporations instituted a separate law action (fifteen in all), on the ground of the unconstitutionality of the statutes invoked by the director of licenses, for the recovery of all fuel oil excise taxes and petroleum products excise taxes paid by them within the period of three years

under chapter 180, Laws of 1935, as amended by chapter 116, Laws of 1937, and under chapter 186, Laws of 1939, since May 1, 1939. Trial to the court resulted in decrees in the equity cases and judgments in the law actions in favor of the plaintiff corporations. The state director of licenses and other defendants appealed.

The amounts for which the judgments are entered are not in dispute. The fifteen actions were consolidated for hearing in this court.

The equity suits and law actions were instituted by respondent distributors on the theory, with which the trial court agreed, that chapter 180, Laws of 1935, and chapter 116, Laws of 1937, amendatory of chapter 180, *supra,* which imposed an excise tax upon distributors of fuel oil were (as we held in *State v. Inland Empire Refineries, Inc., supra,* with respect to chapter 186, Laws of 1939) invalid as unreasonable and discriminatory; therefore, as the taxes were paid under duress, coercion, or business compulsion, respondents were entitled, under *Great Northern R. Co. v. State,* 200 Wash. 392, 93 P. (2d) 694, to recovery of amounts paid as involuntary payments.

The first fuel oil tax statute in this state was enacted as Title XI, chapter 180, Laws of 1935. It was entitled, in part,

"An Act relating to revenue and taxation; . . . providing for the levy and collection of a tax upon the sale, use or distribution of fuel oil and diesel oil; . . ."

That statute imposed

". . . in addition to any other taxes provided by law, an excise tax upon every distributor at the rate of one-quarter (¼) cent for each gallon of fuel oil and/or diesel oil sold, distributed, withdrawn or used by him in the state of Washington."

In 1937, the legislature enacted chapter 116, Laws of 1937, which amended Title XI, chapter 180, Laws of 1935. The act was entitled:

"An Act providing an excise tax upon the business of selling fuel oil and amending [Title XI] sections 78, 79, 80 and 81 of chapter 180, Laws of 1935 . . ."

The statute imposed

". . . in addition to any other taxes provided by law, an excise tax upon every distributor at the rate of one-quarter (¼) cent for each gallon of fuel oil sold, distributed, or withdrawn by him in the State of Washington."

The amendatory act of 1937 changed the nature of the tax from one for the privilege of distributing fuel oil to a tax upon the business of selling fuel oil; that is, the 1937 statute fixed the nature of the use of the oil as the standard for the imposition of the tax. Section 2, chapter 116, Laws of 1937, p. 459, amended § 79, chapter 180, Laws of 1935, p. 750, and defined the term "fuel oil" to mean "any liquid or liquefiable petroleum product sold, withdrawn or distributed for the generation of heat or power, . . ." The excise tax upon the business of selling fuel oil was imposed upon fuel oil to be used for the generation of heat or power; the taxation is restricted to that use. It follows that we have for our consideration the question of the validity of the tax upon the business of selling fuel oil which is to be used for the generation of heat or power. It is only the use for the generation of heat or power that is taxable, hence we are not concerned with the fact that the oil may be used for weed extermination, the manufacturing of gas, and put to other uses.

The business of selling, the distribution, and use of fuel oil are in competition with the business of selling, the distribution, and use of solid fuels. Fuel oil and solid fuels, such as coal, wood, sawdust, and coke, to-

gether with the mechanical contrivances incidental to their use, such as oil burners, coal stokers, and sawdust burners, are marketed in competition with each other. A distributor of fuel oil is required to pay a tax of approximately ten per cent more for the privilege of distributing fuel oil than is paid by the distributors of coal, wood, sawdust, coke, gas, and electricity. No reasonable ground exists for making a distinction between those who fall within the classification of distributors of fuel subject to the tax and distributors of fuel not subject to the tax.

We held in *State v. Inland Empire Refineries, Inc.*, 3 Wn. (2d) 651, 101 P. (2d) 975, under a state of facts the same as in the case at bar, that chapter 186, Laws of 1939, which imposed an excise tax upon distributors of fuel oil, was unconstitutional as unreasonable and discriminatory, since no reasonable ground exists for making a distinction in classification between distributors of fuel oil and distributors of solid fuels, such as coal, wood, sawdust, and coke. The principle of the case cited is applicable to Title XI, chapter 180, Laws of 1935, as amended by chapter 116, Laws of 1937.

The next question presented is whether the excise taxes for the privilege of engaging in the business of a fuel oil distributor were exacted of respondents under conditions amounting to such compulsion as would constitute legal duress, thereby entitling respondents to recovery of the amounts paid, as involuntary payments, even if such payments were not made under protest. That question is foreclosed by *Great Northern R. Co. v. State*, 200 Wash. 392, 93 P. (2d) 694.

The contention of counsel for appellants that the legislature has not made an appropriation from which may be refunded to the distributors the amount of excise taxes paid by them under the invalid statutes, and the running of the statute of limitations, if an ap-

propriation is available, in which to bring actions for recovery of amounts paid, is without substantial merit, as the question presented in the case at bar is the right to recovery of judgment and has nothing to do with the means of satisfying the award.

Counsel for appellants next contend that respondents are not the real parties in interest, as the taxes they paid were passed on to others. The tax was levied against respondent distributors, who are, as the state argued in its petition for rehearing in *State v. Inland Empire Refineries, Inc., supra,* the taxpayers. All taxes, in a sense, may be said to be paid by the consumer. If one paid a real property tax under a statute which was later declared unconstitutional and such taxpayer brought an action for the recovery of the amount he paid under such unconstitutional statute, the fact that the taxpayer added the amount of the invalid tax to the rental price of the property, would not prevent his recovery of the *ad valorem* tax he paid under protest. It is unnecessary to cite numerous authorities to sustain the position that the mere fact that the amount of a tax may be taken into consideration in fixing the price of a commodity would not deprive the seller, who paid the tax in the first instance (respondents in the case at bar), of his status as a real party in interest, whether the action was brought to enjoin collection of the tax or to recover it back after same had been paid.

The question raised by appellants to the effect that respondents are estopped to assert that they were induced by duress to comply with the fuel oil tax statutes involved herein, is foreclosed by *State v. Inland Empire Refineries, Inc., supra,* and by *McDonald v. Pend Oreille Mines & Metals Co.,* 189 Wash. 389, 65 P. (2d) 1250.

In the second case just cited, the defendant was sued

for money due under the president's reemployment agreement, which the court held was executed under duress. In rejecting the contention that the defendant was estopped, we said:

"Respondent is not estopped to assert that the Reemployment Agreement and the acts incidental to it were induced by duress. There can be no ratification 'while the fear or undue influence which operated to induce the original transaction is still effective.' Williston on Contracts, § 1623. The coercion did not cease until the statute was declared invalid in May, 1935, in *Schechter Poultry Corp. v. United States,* 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947."

Counsel for appellants contend that, if respondents are entitled to any recovery, it must be reduced to such payments as were made within two years of the presentation of respondents' claims to the state auditor. The statute upon which appellants rely reads as follows:

"All persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor, to be audited, settled, and allowed, within two years after such claim shall have accrued, and not afterwards. And in all actions brought in behalf of the state, no debt or claim shall be allowed against the state as a setoff, but such as has been exhibited to the auditor, and by him allowed or disallowed, except only in cases where it shall be proved to the satisfaction of the court that the defendant at the time of trial is in possession of vouchers which he could not produce to the auditor, or that he was prevented from exhibiting the claim to the auditor by absence from the state, sickness, or unavoidable accident." Rem. Rev. Stat., § 11007 [P. C. § 6592] (Laws of 1854, p. 411, § 8; Code of 1881, § 2578; Laws of 1890, p. 638, § 12; 1 H. C., § 92).

Rem. Rev. Stat., § 11007, does not require the presentation to the state auditor of claims for tax refunds as a prerequisite to the maintenance of an action

against the state for tax refunds. Each respondent filed a claim with the state auditor on or about the date of the commencement of its law action, and it is true, as counsel for appellants contend, that the claims show that they were not filed within two years from the date of payment of the sums claimed.

Article II, § 26, of the state constitution, which was adopted in 1889, provides that

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

It is not, nor could it be successfully, urged that the foregoing constitutional provision is self-executing. It was not until 1895, when the legislature enacted chapter 95, Laws of 1895, that suits against the state were authorized.

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. . . ." Rem. Rev. Stat., § 886 [P. C. § 6260] (Laws of 1927, p. 331, § 1; Laws of 1895, p. 188, § 1).

Rem. Rev. Stat., § 11007, is not a limitation upon the right to sue the state, it is clear. In the enactment of what is now Rem. Rev. Stat., § 11007, obviously the legislature did not have in mind the curtailment of a right which then did not even exist. Rem. Rev. Stat., § 11007, was enacted as § 12 of act approved March 27, 1890, which was a reenactment of § 8 of an act of the territorial legislature of 1854. The two acts antedate a number of years the enactment (Rem. Rev. Stat., § 886, enacted in 1895) authorizing the filing of a suit against the state.

It is significant that, while the first sentence in Rem. Rev. Stat., § 11007, provides that all persons having claims against the state shall exhibit the same to the auditor, there is not present any provision that such

presentation shall be a prerequisite to filing of suits. The second sentence in the section contains such provision, but the second sentence deals solely with suits brought in behalf of the state, in which cases a claim against the state can be asserted as an offset only if it has been exhibited to the auditor. The cases at bar are not within the provisions of the second sentence of the statute, as they are not actions brought in behalf of the state, and the claims are not asserted as an offset. The legislature was mindful of the fact that, at that time, a suit could not be filed against the state.

The power of taxation by the state is a sovereign power. *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744. The necessity of compliance with Rem. Rev. Stat., § 11007, is to be determined by the capacity in which the state, through its officers, was acting in the situation out of which the claim arose. If the state was acting in a proprietary capacity, its liability would sound in tort, and compliance with the statute would be a necessary prerequisite to holding it responsible. But if the state was acting in its sovereign capacity under its power of taxation, which it was, the filing of a claim would be unnecessary under the authority of *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35.

The statute involved in the various cases (*Buckles v. State,* 221 N. Y. 418, 117 N. E. 811; *Gulf Export Co. v. State,* 112 Miss. 452, 73 So. 281; and *Goodhope v. State,* 50 S. D. 643, 211 N. W. 451) cited by appellants, expressly, specifically, made the presentation of the claim a condition precedent to the bringing of an action on the claim against the state, which clearly distinguish those cases from the case at bar, as Rem. Rev. Stat., § 11007, does not contain any such provision. It is unnecessary to review the other cases cited by appel-

lants; they are also distinguishable from the case at bar, or are not out of harmony with what we have said.

The foregoing opinion was written and released by the undersigned December 16, 1940. A dissent thereto was written February 14, 1941. The causes were thereafter assigned to another member of this court to write the majority opinion, which majority opinion was placed on my desk April 1, 1941. Today, April 15, 1941, my views are as expressed in the above (now dissenting) opinion.

The decrees and judgments in all of the fifteen causes consolidated on this appeal should be affirmed.

STEINERT, J. (dissenting)—I concur in the conclusion reached by Judge Millard that the judgment of the trial court should be affirmed. I therefore dissent from the majority opinion.

